Ismail **ABOU–KHADRA**, Contractors Services Establishment, and Saudi Preinsulated Pipes Industries, Plaintiffs,

v.

Abdallah G. **BSEIRANI**, AGB International Management Corporation, and Pittcon Preinsulated Pipes Corporation, Defendants.

Abdallah G. **BSEIRANI**, AGB International Management Corporation, and Pittcon Preinsulated Pipes Corporation, Plaintiffs,

v.

George T. **MAHSHIE**, Defendant.

Nos. 84–CV–1502 (HGM), 85–CV–1337 (HGM).

United States District Court, N.D. New York.

July 31, 1997.

Hancock & Estabrook, L.L.P., Syracuse, NY (David E. Peebles, of counsel), for Abdallah G. Bseirani, AGB International Management Corporation and Pittcon Preinsulated Pipes Corporation.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, NY (James D. Lantier, of counsel), for George T. Mahshie.

Armani, Fitzpatrick & Snyder, P.C., Syracuse, NY (James P. Fitzpatrick, of counsel), Baker & McKenzie (Grant A. Hanessian, of counsel), New York City, for Ismail Abou-Khadra, Contractors Services Establishment, and Saudi Preinsulated Pipes Industries.

### MEMORANDUM–DECISION AND ORDER

MUNSON, Senior District Judge.

### INTRODUCTION

Presently before the court is Abdallah G. Bseirani's, AGB International Management

Corporation's and Pittcon Preinsulated Pipe Corporation's (hereinafter "the Bseirani Parties") motion to recover reasonable attorney's fees and costs for legal services rendered in connection with the successful litigation of claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1964(c). For the reasons set forth in this Memorandum–Decision and Order, the court grants the Bseirani Parties' motion in the total amount of $620,361.48. Of this amount, $176,734.58 is apportioned against Mr. Mahshie and $443,626.90 is apportioned against Ismail Abou–Khadra, Contractors Services Establishment and Saudi Preinsulated Pipes Industries (hereinafter "the Abou–Khadra Parties").

### BACKGROUND

The instant motion is the culmination of litigation arising from a failed business relationship between Ismail Abou–Khadra and Abdallah G. Bseirani. The relationship began in late 1978 when George T. Mahshie introduced the two parties and continued until the early 1980's when Mr. Bseirani and Mr. Abou–Khadra had a falling out over the operation and control of two companies, Contract Services Establishment and Saudi Preinsulated Pipes Industries.

Initially, the Bseirani Parties commenced an action against Mr. Mahshie in state court, which ultimately was settled. The Abou–Khadra Parties commenced suit in this court against a number of defendants, including the Bseirani Parties and Mr. Mahshie. The Bseirani Parties asserted seventeen counterclaims against the Abou–Khadra Parties, Mr. Mahshie and others in the federal action. Included in these counterclaims were alleged violations of RICO, 18 U.S.C. §§ 1961–1968. The jury found against the Abou–Khadra Parties on their claims against the Bseirani Parties and for the Bseirani Parties on their counterclaims against the Abou–Khadra Par-

ties and Mr. Mahshie, including those alleging violations of RICO.

On appeal, the Second Circuit affirmed the finding of liability against the Abou–Khadra Parties and set aside the finding of liability against Mr. Mahshie, ordering a new trial for Mr. Mahshie only. *Abou–Khadra v. Bseirani,* 4 F.3d 1071 (2d Cir.1993). Upon remand, the jury found in favor of the Bseirani Parties on all claims against Mr. Mahshie, including two violations of RICO. The Second Circuit affirmed these findings. *Bseirani v. Mahshie,* 107 F.3d 2 (2d Cir.1997).

The Bseirani Parties now move to recover the attorney's fees and costs incurred as the result of successful litigation of their counterclaims against Mr. Mahshie and the Abou–Khadra Parties.[1] In support of their motion the Bseirani Parties have submitted billing memoranda detailing the legal services rendered between June 17, 1985 and May 31, 1995. These records reveal that the Bseirani Parties seek a total award (fees and costs) of $952,777.37 apportioned as follows: $632,-118.47 against the Abou–Khadra Parties and $320,658.90 against Mr. Mahshie. In addition, the Bseirani Parties acknowledge that a portion of the time spent litigating these claims and the associated costs are common to claims against both Mr. Mashie and the Abou–Khadra Parties. Thus, they request that $238,664.58 of the total award be deemed joint and several.

Mr. Mahshie objects to the motion on the basis that the Bseirani Parties have failed to provide sufficient detail to permit the court to apportion the costs between the Abou–Khadra Parties and Mr. Mahshie. Therefore, Mr. Mahshie asks the court either to order the Bseirani Parties to resubmit their application in more detail or to reduce the requested amount to reflect only those fees and costs necessarily incurred in the second trial.

---

1. The Bseirani Parties filed an initial motion against Mr. Mahshie and the Abou–Khadra Parties for attorney's fees and costs following the first trial. This motion was withdrawn without prejudice in light of the remanded trial for Mr. Mahshie. In June 1995, the Bseirani Parties filed a motion for attorney's fees and costs only against Mr. Mahshie. Now, the Bseirani Parties have withdrawn their motion against Mr. Mahshie and in its place substituted the instant motion against Mr. Mahshie and the Abou–Khadra Parties.

The court notes that the Abou–Khadra Parties have filed no opposition to this motion.

## DISCUSSION

### I. Reasonable Attorney's Fee

Under the "American System" each party in a lawsuit usually bears the burden of paying its own attorney's fees and costs. *Hensley v. Eckerhart*, 461 U.S. 424, 429–30, 103 S.Ct. 1933, 1937–38, 76 L.Ed.2d 40 (1983); *Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616–17, 44 L.Ed.2d 141 (1975). Certain statutes, however, provide that the successful party may recover such fees and costs from the adverse party. *Alyeska*, 421 U.S. at 247–271, 95 S.Ct. at 1616–1628. The Bseirani Parties rely upon section 1964(c) of RICO as the basis for their request.

In relevant part this statute provides that: "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). An applicant for an award under § 1964(c) bears the burden of establishing entitlement to such an award and documenting the appropriate hours expended and the hourly rates. *Hensley*, 461 U.S. at 424, 103 S.Ct. at 1935. Therefore, the court initially must inquire whether the Bseirani Parties properly have demonstrated their entitlement to recovery pursuant to § 1964(c). If such entitlement has been established, the court will then analyze the submitted hours and requested rates to determine the final award.

### II. Entitlement to Award

■ To establish entitlement to an award under § 1964(c), a movant must demonstrate that he is a prevailing party. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *see also Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103 (2d Cir.1991). To be considered a prevailing party for the purposes of such an award, a movant must demonstrate success "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939; *see also Bridges v. Eastman Kodak Co.*, 102 F.3d 56 (2d Cir.1996); *Carroll v. Blinken*, 42 F.3d 122, 129 (2d Cir.1994).

Here, there is no question that the Bseirani Parties are prevailing parties against both the Abou–Khadra Parties and Mr. Mahshie. The Bseirani Parties' counterclaims were resolved in two trials that resulted in jury findings that the Abou–Khadra Parties and Mr. Mahshie had violated RICO. The findings of both trials were affirmed on appeal. *Abou–Khadra*, 4 F.3d 1071; *Bseirani*, 107 F.3d 2. Accordingly, the court concludes that the Bseirani Parties have demonstrated entitlement to an award under § 1964(c).

### III. Determination of Award

Having determined that the Bseirani Parties are prevailing parties, the court moves to the determination of an appropriate award. The responsibility for performing the analysis necessary to determine a fee award falls to the trial court. *Bingham v. Zolt*, 66 F.3d 553, 565 (2d Cir.1995). This court is aware, however, that it should not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." *Seigal v. Merrick*, 619 F.2d 160, 164 n. 8 (2d Cir.1980) (quoting *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116 (3d Cir.1976)). As the Supreme Court has indicated, "a request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

■ An initial reasonable fee is determined by multiplying the number of hours reasonably expended by the hourly rate customarily charged for similar litigation by attorneys of the same skill in the area. *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977). The product of these figures is referred to as the "lodestar" amount. *United States Football League*, 887 F.2d at 415. As the Supreme Court has explained, "[t]his amount provides an objec-

tive basis on which to make an initial estimate of the value of the lawyer's services." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. Although, this figure ultimately may be adjusted upward or downward, there is a strong presumption that the lodestar figure represents a "reasonable" amount. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 565, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439 (1986).

### A. Determination of Reasonable Hours

The first step in the calculation of a lodestar amount is to determine the reasonableness of the hours billed by the prevailing party's counsel. Fundamental to this determination is the submission of time records showing the hours spent by the attorney in pursuit of his client's claims.

To establish the number of hours spent on the successful prosecution of their RICO claims, the Bseirani Parties have submitted computer generated billing records covering the work of forty-seven individuals for a period of 10 years. The submitted records list the person providing the service, the date on which the service was performed, the amount of time that was spent, a brief description of the work performed, and the value of the time calculated at the normal billing rates. Exs. B and C att'd to Bseirani Parties Aff., Doc. 445 in Case No. 84–CV–1502. According to these records, the Bseirani Parties seek attorney's fees for a total of 5818.25 hours expended over a ten year period. The following chart breaks these hours down by the year in which they were expended and the party against whom these hours are chargeable.

| HOURS | Abou–Khadra Parties Only | Mahshie Only | Common to Both | Total |
|---|---|---|---|---|
| 1995 | 0 | 51.75 | 0 | 51.75 |
| 1994 | 123.25 | 536.25 | 0 | 659.5 |
| 1993 | 60.75 | 11.75 | 0 | 72.5 |
| 1992 | 340.75 | 11.5 | 0 | 352.25 |
| 1991 | 2231.25 | 25.75 | .75 | 2257.75 |
| 1990 | .25 | .5 | 303 | 303.75 |
| 1989 | 0 | 8.25 | 488 | 496.25 |
| 1988 | 1.25 | 0 | 415.25 | 416.5 |
| 1987 | 41.25 | 29.75 | 655.5 | 726.5 |
| 1986 | 3.75 | 0 | 207.25 | 210.95 |
| 1985 | 106.25 | 0 | 164.25 | 270.45 |
| **TOTAL:** | 2908.75 | 675.5 | 2234 | 5818.25 |

In response, Mr. Mahshie raises several arguments relating to the sufficiency of the submitted time records. The court will address each of his concerns seriatim.

### 1. Specificity of the Time Records

Mr. Mahshie argues that the billing records are vague, making the determination of which entries are attributable to each claim and each defendant impossible. As an example, he highlights a July 9, 1985 entry from the Bseirani Parties' billing records that claims 4.75 hours for "reading file; telephone conversation with client." Mahshie's Aff., Doc. 458.

The Second Circuit has held that the necessary time records must be made contemporaneously with the associated work. *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). These records must also "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). Such records are necessary so that the court "[m]ay determine the nature of the work done, the need for it, and the amount of time

reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987). As a guide to evaluating these records the Second Circuit has held that it is less important that judges attain exactitude, which may be impossible, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992).

The submitted time records clearly provide the required elements for a successful fee application. It is not necessary that the records be so specific as to align each entry directly and exclusively with one defendant and/or one claim. In fact, the conspiratorial nature of the present RICO claims and the presence of multiple parties prevents such exactitude. While there may be instances where the time records could be more specific, on the whole they comport with the Supreme Court's view that "at least counsel should identify the general subject matter of his [or her] time expenditures." *Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. After reviewing the submitted records in light of these standards the court concludes that the submitted billing entries do not offend its sense of reasonableness.

### 2. Relation Between Hours Claimed and the Particular Defendant

■ Mr. Mahshie challenges the reasonableness of the submitted time records on the grounds that only the fees and costs of the second trial may be apportioned to him. Mahshie's Mem. of Law, Doc. 458. He explains that since a judgment was not entered against him in the first trial, the allowable fees and costs against him must be limited to only those fees and costs necessarily associated with the second trial. Mahshie's Aff., Doc. 458.

At issue here is whether the claims determined at the second trial against Mr. Mahshie were the same or distinct from those determined at the first trial against the Abou–Khadra Parties and others. This determination is necessary in light of the triggering provision of 18 U.S.C. § 1964(c) which limits recovery of reasonable attorney's fees and costs to the successful prosecution of a violation of 18 U.S.C. § 1962.

A review of the procedural history of this matter is necessary to define the claims involved at each trial. The initial trial concerned, inter alia, RICO counterclaims by the Bseirani Parties against the Abou–Khadra Parties and Mr. Mahshie. A jury found for the Bseirani Parties with respect to their RICO counterclaims. However, the Second Circuit reversed with respect to Mr. Mahshie because of an incorrect jury instruction and evident jury confusion as to damages. *See Abou–Khadra*, 4 F.3d 1071. Upon retrial, the new jury found against Mr. Mahshie on all counts, including two violations of RICO. The RICO violations in the remanded trial were the same ones originally alleged in the first trial. *See Bseirani v. Mahshie*, 881 F.Supp. 778, 781–82 (N.D.N.Y.1995).

This brief history demonstrates that the second trial did not involve the litigation of claims distinct from those litigated at the first trial. Rather, the second trial was the next procedural phase of the same action commenced in the first trial. This situation is analogous to a party that files a summary judgment motion, loses on the motion, but ultimately succeeds at trial. The party still would be considered the prevailing party on its claim, even though it had failed to resolve the matter by means of a pretrial motion. Likewise, the Bseirani Parties are prevailing parties with respect to their RICO counterclaims against Mr. Mahshie, even if they did not succeed on these claims at the end of the first trial.

It is the party's ultimate success on a claim, not the piecemeal success or failure on the interlocutory steps taken to reach this judgement that is the dispositive element in determining whether an award is appropriate. 18 U.S.C. § 1964(c). Accordingly, the court finds that the hours the Bseirani Parties spent preparing for the first trial are fairly and properly apportioned to Mr. Mahshie.

### 3. Number of Attorneys

Mr. Mahshie's final concern regarding the reasonableness of the hours claimed is redun-

dancy and duplication of effort. Mahshie's Aff., Doc. 458. In support of this argument, Mr. Mahshie points specifically to the inclusion of the hours of twenty-one attorneys, three paralegals, and ten law clerks in the Bseirani Parties' motion.[2] He argues that this staffing level is excessive and unnecessary for the litigation involved. Mahshie's Aff., Doc. 458. Therefore, Mr. Mahshie asks the court to limit the amount of reasonable hours to only those hours necessary for the Bseirani Parties to succeed at the second trial and eliminate all remaining hours as duplicative or redundant effort. Mahshie's Mem. of Law, Doc. 458.

Prior to discussing the merits of this argument, the court briefly addresses Mr. Mahshie's distinction between the first and second trial. As discussed above, the presence of two trials is not relevant to a determination of the present motion. The underlying RICO claims in the second trial are the same as those litigated in the first trial. Therefore, Mr. Mahshie's attempt to distinguish between work necessary for the first trial and work necessary for the second trial is unpersuasive. Accordingly, the court will consider all of the hours submitted, no matter on which trial they were expended.

■ The Second Circuit has left the determination of redundancy in fee applications to the discretion of the district court:

> prevailing parties are not barred as a matter of law from bringing a second attorney to depositions or an extra lawyer to court to observe and assist.... Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but ... *such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.*

*New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) (citations omitted) (emphasis added). The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." *Carey,* 711 F.2d at 1146.

■ Initially, the court recognizes that the Bseirani Parties have met their obligation to make a "good faith effort to exclude from [the] fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939. For example, the Bseirani Parties have deleted billing entries for an unsuccessful motion for attachment, efforts related to the malpractice claim against a third party, work performed on tax issues, work on compensatory and punitive damages under their common law causes of action, time spent on the punitive damages portion of the trial, research involving pre-verdict interest on the common law claims, fees in connection with the unsuccessful litigation against other defendants, and other entries for which it is difficult to determine the nature of the services provided. Bseirani Parties' Mem. of Law, Doc. 446 at 12. With respect to the effort necessary to prevail, the court recognizes that the Bseirani Parties' claims contain complicated issues of law, the resolution of which took over a decade. Under these circumstances, the court finds nothing excessive or inappropriate about the number of attorneys and other personnel included in the Bseirani Parties' motion.

In conclusion, having considered all of Mr. Mahshie's objections to the hours contained in the Bseirani Parties' motion, the court concludes that no adjustment is necessary to the 5818.25 hours claimed.

### 4. *Allocation of Common Hours*

■ To ensure that the hours are properly allocated to Mr. Mahshie and the Abou–Khadra Parties, the court now examines the allocation of hours common to both parties. The Bseirani Parties' billing record placed each time entry into one of three groups. The first group contained the hours spent solely on claims against the Abou–Khadra Parties. The second consisted of the hours spent solely on claims against Mr. Mahshie. The third

---

**2.** The Bseirani Parties' motion actually includes the hours of thirty-four attorneys, three paralegals, and ten law clerks.

group comprised the hours spent on issues common to both parties. To arrive at a total number of hours for each party, the Bseirani Parties added the specific hours for that party to the total number of common hours. This method produced a total number of hours for each party and a total for the hours common to Mr. Mahshie and the Abou–Khadra Parties.

By adding the common hours into the total for each party the Bseirani Parties create the risk of double counting hours. To prevent double counting, the Bseirani Parties seek to apply joint and several liability to the common hours. The court finds no precedent supporting the use of joint and several liability to apportion attorney's fees against multiple parties. In addition, applying such a theory introduces the possibility that either Mr. Mahshie or the Abou–Khadra Parties will bear the burden of all the common hours. This result is entirely inequitable and inappropriate.

As a result, the court applies the following approach to the hours identified as common to Mr. Mahshie and the Abou–Khadra Parties. First, the hours spent solely on Mr. Mahshie and the Abou–Khadra Parties will be determined. Second, the amount of hours common to both parties will be determined. Third, the common hours will be divided in half. One half of the common hours will then be added to the amount of hours spent solely on the claims of each party. This calculation will produce a total number of hours for each party, which will be used to calculate the lodestar amount.[3]

### B. Determination of Billing Rates

#### 1. Productive Hours

Having determined the number of reasonable hours expended, the court must determine the appropriate billing rates. The Bseirani Parties request that the court adopt the normal billing rates of the individuals involved as reflected in their time records. In support of this position, the Bseirani Parties' memorandum contains a rate chart that lists the normal billing rate for each partner, associate, paralegal and law clerk for the

years 1985 through 1995. Bseirani Parties' Mem. of Law at 7.

■ It is well settled that a reasonable rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); *Cruz v. Local Union No. 3 of Int'l. Bhd.,* 34 F.3d 1148, 1159 (2d Cir.1994) (citations omitted); *In re Agent Orange Prod. Liab., Litig.,* 818 F.2d 226, 232 (2d Cir.1987). For purposes of this determination, the boundary of the community is the "district in which the court sits." *Atlantic States Legal Found., Inc. v. Onondaga Dep't of Drainage and Sanitation,* 899 F.Supp. 84, 89 (N.D.N.Y.1995) (quoting *Polk v. New York State Dep't of Correctional Servs.,* 722 F.2d 23, 25 (2d Cir.1983)).

■ Prior to the calculation of actual rates, the length of the litigation (1985–1995) requires the court to look at the impact of this time period on the determination of a reasonable fee. The general rule in this circuit is that "historic rates should be used ... in setting fee awards in multi-year cases." *Carey,* 711 F.2d at 1153; *Grant v. Martinez,* 973 F.2d 96, 100 (2d Cir.1992). The historic rate is the applicable rate at the time the service was provided, not the current rate charged for a similar service. *Carey,* 711 F.2d at 1152. In general, the Bseirani Parties' figures comply with the historic rate formula. The hourly rates for all personnel are the actual rates charged for each year. For example, the requested rate for Mr. Peebles was $75 per hour in 1985 and increased annually, reaching a rate of $185 per hour in 1995. Bseirani Parties' Mem. of Law, Doc. 446 at 7.

■ An exception to this general rule occurs in protracted cases. In such instances the Second Circuit has held that it is sufficient to divide the case into "two phases and use one rate for the early phase and [the] current rate for the later phase." *Carey,* 711 F.2d at 1153. Consistent with this guideline, given the ten-year period at issue in this

---

3. See Appendix for a summary table showing the complete breakdown of hours.

case, the court splits the litigation into two phases: 1985–1990 and 1991–1995. However, in those situations in which the requested rate is below the court-established historic rate for that phase, the court will apply the requested rate.

The court begins with lead attorneys and partners in a law firm who possess the experience and qualifications of those who represented the Bseirani Parties. In a survey of cases, this court finds that $150 per hour is clearly the prevailing rate for partners during the 1991–1995 phase. *See Equal Employment Opportunity Comm'n v. American Fed'n of State, County and Mun. Employees,* No. 94–CV–1022, 1996 WL 663971 (N.D.N.Y. Nov. 12, 1996) ($150 per hour reasonable for partner with 20 years experience); *Segarra v. Messina,* 158 F.R.D. 230, 235 (N.D.N.Y. 1994) ($150 per hour is reasonable for a partner); *Greenwich Citizens Comm. v. County of Warren,* No. 92–CV–310, 1994 WL 631212 (N.D.N.Y. Nov. 4, 1994) ($150 per hour reasonable for lead counsel); *Hannigan,* 1997 WL 10971 at *8 ($150 per hour is reasonable for partners).

The court's determination of a rate for the years 1985 through 1990 is more difficult because the case law demonstrates that the rates awarded during this period were not consistent. The cases in the later years of this period lean towards higher-awards than those in the earlier years. Therefore, in order to comply with the Second Circuit's requirement that historic rates be used, the court further divides this earlier period into two groups: 1985–1987 and 1988–1990. *See Carey,* 711 F.2d at 1153. After a review of the relevant case law, the court finds that the historic rate for lead attorneys and partners from 1988 to 1990 is $150 per hour and the historic rate from 1985 to 1987 is $120 per hour. *See Macko v. General Motors Corp., Fisher Body Div.,* No. 80–CV–716, 1988 WL 73446 (N.D.N.Y. July 12, 1988) ($150 per hour for lead attorney 1987–1988 and $120 per hour for 1985–1987); *Auburn Enlarged City Sch. Dist. v. Coastal Envtl. Safety and Control, Inc.,* No 87–CV–1624, 1990 WL 19139 (N.D.N.Y. Feb. 27, 1990)($150 per hour

in 1988); *Westchester Legal Servs., Inc. v. County of Westchester,* No. 85–Civ–115, 1987 WL 6160, *5 (S.D.N.Y. Jan. 27, 1987)( $120 per hour reasonable for lead counsel).

The court recognizes that these rates are on the high end of rates awarded in this district during that period. *See McKever v. Vondollen,* 681 F.Supp. 999 (N.D.N.Y.1988) ($75 per hour awarded for lead attorney); *Fiacco v. City of Rensselaer,* 663 F.Supp. 743 (N.D.N.Y.1987) ($75 per hour awarded for lead attorney). However, in light of the complex nature of the issues involved in the instant case, the court concludes that these rates are reasonable. Accordingly, the court will apply these rates to all partners and of counsel personnel in this matter.[4]

The rates for associates require the same analysis. It is clear that the historic rate for an associate in this district from 1991 to 1995 is $100 per hour. See *Hannigan,* 1997 WL 10971 at *8 ($100 per hour is reasonable for associates); *Segarra,* 158 F.R.D. at 235 ($100 per hour is reasonable for associates). The historic rate from 1985 to 1990 is $75 per hour. *See New York State Teamster Conf. Pension and Ret. Fund v. Hogan–Souhan All Star Dairy,* No. 87–CV–627, 1988 WL 59259 (N.D.N.Y. June 7, 1988) ($75 per hour is a reasonable rate for associates); *McKever,* 681 F.Supp. at 999 ($70 per hour is a reasonable rate for co-counsel). Accordingly, the court will apply these rates to all associates in this matter.[5]

The Bseirani Parties also include the work of various paralegals and law clerks in their application. The work of such individuals is compensable as part of an attorney's fee application. *Hannigan,* 1997 WL 10971 at *8 (citing *Chambless v. Masters, Mates & Pilots Pension Plan,* 885 F.2d 1053, 1058 (2d Cir.1989)). Following a review of recent cases, the court concludes that the historic rate for paralegals and law clerks in this district from 1991 to 1995 is $50 per hour and from 1985 to 1990 is $25 per hour. *See Hannigan,* 1997 WL 10971 at *8 (citing *Luciano v. Olsten Corp.,* 925 F.Supp. 956, 963

---

4. See Appendix for tables showing the application of these rates by year.

5. See Appendix for tables showing the application of these rates by year.

(E.D.N.Y.1996) ($50 per hour is reasonable for law students)); *Newchannels Corp. v. Koplik*, 903 F.Supp. 333, 335 (N.D.N.Y.1995) ($50 per hour is reasonable for paralegals); *Gray v. Millea*, 892 F.Supp. 432, 439 (N.D.N.Y.1995) ($50 per hour is reasonable for paralegals); *Pickman v. Dole*, 671 F.Supp. 982, 990 (S.D.N.Y.1987) (citing *Grogg v. General Motors Corp.*, 612 F.Supp. 1375, 1382–1383 (S.D.N.Y.1985) ($25 per hour found reasonable for paralegals in 1985 and 1987)). Accordingly, the court will apply these rates to all paralegals and law clerks in this matter.[6]

### 2. Rates for Travel Time

 The decision to compensate an attorney for his travel time falls within the district court's discretion. *Peterson v. Foote*, No. 83–CV–153, 1994 WL 116450, *3 (N.D.N.Y. Mar. 23, 1994) (citing *Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir.1991)) *aff'd. w/o pub. opinion*, 48 F.3d 1212 (2d Cir.1994). In this district, requested rates for travel time are reduced when the court finds that time spent during travel is unproductive and demands a lower rate. *Peterson*, 1994 WL 116450 at *3 (50% reduction in rate); *Boston v. Brown*, No. 88–CV–1170, 1996 WL 221561, *6 (N.D.N.Y. Apr. 23, 1996) (requested rate of $85 per hour reduced to $50 per hour); *EEOC v. AFSCME*, 1996 WL 663971, at *7 (50% reduction in rate for travel time).

 A thorough reading of the Bseirani Parties' motion papers reveals that time spent for travel between Syracuse and Washington, DC on May 16, 1990 and travel between Syracuse and New York City on No-vember 14, 1991 is included in the total amount of hours billed.[7] This time is not separated from the other submitted hours for these dates and no argument is made concerning productivity during the travel time. Accordingly, the billing rate for this time is reduced by 50% to a rate of $75 per hour.[8] Moreover, because the travel hours are not separated from the other hours on the same dates, the court is unable to determine how much of the time billed for these days is solely travel time. Thus, the court will apply the reduced travel time rate to the entire billing entry for these dates.

### C. Determination of the Lodestar Amount

Having determined the number of hours reasonably expended and the appropriate billing rates, the court now can determine the lodestar amount. According to the court's calculations, the lodestar amount is $554,477.52. This figure breaks down as follows: $161,655.64 against Mr. Mahshie and $392,821.88 against the Abou–Khadra Parties.[9] The lodestar amount by year and party is as follows:

| LODESTAR | Abou–Khadra Parties | Mahshie |
| --- | --- | --- |
| 1995 | $0 | $ 3,612.50 |
| 1994 | $ 14,997.50 | $ 55,750.00 |
| 1993 | $ 7,550.00 | $ 1,762.50 |
| 1992 | $ 38,416.25 | $ 1,081.25 |
| 1991 | $226,507.50 | $ 2,218.75 |
| 1990 | $ 15,287.50 | $ 15,325.00 |
| 1989 | $ 22,563.12 | $ 23,328.13 |
| 1988 | $ 17,273.13 | $ 17,166.88 |
| 1987 | $ 27,884.38 | $ 27,480.63 |
| 1986 | $ 7,730.00 | $ 7,317.50 |
| 1985 | $ 14,612.50 | $ 6,612.50 |
| **TOTAL:** | $392,821.88 | $161,655.64 |

Once the lodestar amount is calculated there is a strong presumption that this figure constitutes a reasonable amount. *City of Burlington v. Dague*, 505 U.S. 557, 563, 112 S.Ct. 2638, 2641–42, 120 L.Ed.2d 449 (1992). The burden falls on the party advocating an adjustment to justify that a change is neces-

---

**6.** See Appendix for tables showing the application of these rates by year

**7.** The trip to Washington occurred on May 16, 1990. Two partners, Mr. Peebles and Mr. Andrus, made this trip. The charge for this trip is apportioned to both Mr. Mahshie and the Abou–Khadra Parties. The New York trip occurred on November 14, 1991. One partner and one associate, Mr. Peebles and Ms. Berry, made this trip.

The charge for this trip is apportioned to the Abou–Khadra Parties only.

**8.** This reduction is reflected in tables included in Appendix A.

**9.** See Appendix for a complete summary of the figures used to determine the lodestar amount and the final fee award.

sary. *United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989) (citing *Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 118 (3d Cir.1976)).

Mr. Mahshie offers two reasons to reduce the lodestar amount. First, he argues that the Bseirani Parties failed to submit time records which adequately allow the court to match time spent to specific claims. Mahshie's Mem. of Law, Doc. 458. Second, he contends that the motion assigns hours to Mr. Mahshie that should be attributed only to the Abou–Khadra Parties. Mahshie's Mem. of Law, Doc. 458. These arguments are unpersuasive. As described above, the submitted time records adequately detail the apportionment of costs between Mr. Mahshie and the Abou–Khadra Parties. Accordingly, the court does not find a sufficient justification to depart from the reasonable lodestar amount.

## IV. Costs

The Bseirani Parties' motion includes a request for costs in the amount of $98,571.12. This amount is apportioned as follows: $71,463.47 against the Abou–Khadra Parties and $27,107.65 against Mr. Mahshie. In addition, $26,369.58 of the total amount represents costs common to both Mr. Mahshie and the Abou–Khadra Parties. The costs included in the instant motion are comprised of the following items: photocopies, postage, LEXIS research, long distance telephone and telex charges, local travel expenses, various filing fees, deposition and stenographer costs and other miscellaneous expenses incurred during preparation for trial.

The costs associated with litigation are generally recoverable if they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (citing *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir.1984)). The scope of allowed costs should include those that are "incidental and necessary" to the representation of the client. *Id.* (citing *Northcross v. Board of Educ.*, 611 F.2d 624, 639 (6th Cir.1979)). Under this rule, costs

are not allowed if they cannot be attached to the advancement of a specific claim, or if they are so general that they could be placed under the cost umbrella of overhead or office expense. *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350, 1363 (S.D.N.Y.1990), *aff'd in part. rev'd in part on other grounds*, 961 F.2d 390 (2d Cir.1992).

With two exceptions, the court agrees and finds that these costs are reasonable expenses, consistent with those granted in the course of providing legal services and usually charged to a fee-paying client. *See Thomas v. Board of Educ.*, 505 F.Supp. 102, 105 (N.D.N.Y.1981) (allowing recovery for travel costs, telephone bills and photocopying costs); *Fiacco v. City of Rensselaer*, 663 F.Supp. 743, 746 (N.D.N.Y.1987) (allowing recovery for postage and telephone calls).

The first exception is the inclusion of fees paid for the legal services of Mr. Saba in the amount of $2,861.63. Mr. Saba provided legal advice to the Bseirani Parties and served as an expert witness with regard to Saudi Arabian Law in the first trial. The Bseirani Parties do not seek to recover the costs of Mr. Saba's time spent as an expert witness, in recognition that such costs are not recoverable. Bseirani Parties' Mem. of Law, Doc. 446 at 17; *see also Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir.1971), *rev'd on other grounds*, 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *U.S. Industries, Inc. v. Norton Co.*, 578 F.Supp. 1561 (N.D.N.Y.1984). However, they do seek to recover the costs of his legal assistance.

To support the recovery of this cost, the Bseirani Parties submit billing letters from Mr. Saba that briefly list the legal services and associated disbursements provided by Mr. Saba. These letters do not specify the dates of the services or the amount of time expended by Mr. Saba. In addition, the only information provided about Mr. Saba in the Bseirani Parties' motion is that he is an expert in Saudi Arabian law and that he provided useful advice.

This information is insufficient to justify recovery. In order to successfully include the work of an outside attorney as a cost a significantly higher level of specificity concerning dates, times and effort is necessary. Accordingly, the court concludes that the

Bseirani Parties may not recover the cost of Mr. Saba's work.

The court also takes exception to the Bseirani Parties' inclusion of LEXIS fees in their application for costs. The Second Circuit has held that the cost of electronic computer research is not recoverable in a motion for attorney's fees and costs. *United States v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir.1996) (citing *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1441 (7th Cir.1994)). Therefore, the court denies the recovery of any costs for LEXIS research.

Subtracting the costs for these exceptions from the total sought, the court concludes that the Bseirani Parties are entitled to costs in the amount of $65,883.96. Costs listed as common to Mr. Mahshie and the Abou–Khadra parties will be treated in the same manner as the hours claimed as common to both for purposes of their attorney's fee application; i.e., the total amount of common costs will be divided in half and Mr. Mahshie and the Abou–Khadra Parties will be apportioned an equal share. Accordingly, the court divides the costs as follows: $15,078.94 against Mr. Mahshie and $50,805.02 against the Abou–Khadra Parties.

### CONCLUSION

For the reasons stated above, the court concludes that the Bseirani Parties are entitled to recover reasonable attorney's fees pursuant to 18 U.S.C. § 1964(c). The total amount of the award, including both fees and costs, is $620,361.48. This is apportioned as follows: $161,655.64 in attorney's fees and $15,078.94 in costs against Mr. Mahshie and $392,821.88 in attorney's fees and $50,805.02 in costs against the Abou–Khadra Parties. The Clerk of the Court is directed to enter judgment for these amounts in favor of the Bseirani Parties and against Mr. Mahshie and the Abou–Khadra Parties.

**IT IS SO ORDERED.**

## APPENDIX
### Final Award Determination

**Total Award**

| | Abou–Khadra Parties | Mahshie | TOTAL |
|---|---|---|---|
| Lodestar | $392,821.88 | $161,655.64 | $554,477.52 |
| Costs | $ 50,805.02 | $ 15,078.94 | $ 65,883.96 |
| **TOTAL:** | $443,626.90 | $176,734.58 | $620,361.48 |

**Lodestar Amount (Fees Only)**

| | Abou–Khadra Parties | Mahshie |
|---|---|---|
| 1995 | $ 0.00 | $ 3,612.50 |
| 1994 | $ 14,997.50 | $ 55,750.00 |
| 1993 | $ 7,550.00 | $ 1,762.50 |
| 1992 | $ 38,416.25 | $ 1,081.25 |
| 1991 | $226,507.50 | $ 2,218.75 |
| 1990 | $ 15,287.50 | $ 15,325.00 |
| 1989 | $ 22,563.12 | $ 23,328.13 |
| 1988 | $ 17,273.13 | $ 17,166.88 |
| 1987 | $ 27,884.38 | $ 27,480.63 |
| 1986 | $ 7,730.00 | $ 7,317.50 |
| 1985 | $ 14,612.50 | $ 6,612.50 |
| **TOTAL:** | $392,821.88 | $161,655.64 |

**Costs**

| | Abou–Khadra Parties | Mahshie |
|---|---|---|
| 1995 | $ 0.00 | $ 284.02 |
| 1994 | $ 2,309.45 | $ 2,544.72 |
| 1993 | $ 682.75 | $ 0.00 |
| 1992 | $ 8,726.38 | $ 0.00 |
| 1991 | $ 26,963.54 | $ 55.70 |
| 1990 | $ 2,007.06 | $ 2,007.06 |
| 1989 | $ 3,008.13 | $ 3,133.13 |
| 1988 | $ 1,826.46 | $ 1,851.46 |
| 1987 | $ 4,396.59 | $ 4,396.59 |
| 1986 | $ 241.13 | $ 241.13 |
| 1985 | $ 643.53 | $ 565.13 |
| **TOTAL:** | $ 50,805.02 | $ 15,078.94 |

### Final Fee Award Determination

| | Hours Spent on Claims Against Abou–Khadra | Hours Spent on Claims Against Mahshie | Hours & Costs Common to Both | Hourly Rate | Total Against Abou–Khadra* | Total Against Mahshie* |
|---|---|---|---|---|---|---|
| **1995** | | | | | | |
| **PARTNERS:** | | | | | | |
| Peebles | — | 9.75 | — | $150.00 | — | $ 1,462.50 |
| Pfohl | — | 0.5 | — | $150.00 | — | $ 75.00 |
| **PARALEGALS:** | | | | | | |
| Santoro | — | 37 | — | $ 50.00 | — | $ 1,850.00 |
| Clifford | — | 4.5 | — | $ 50.00 | — | $ 225.00 |
| **1995 Hours** | — | 51.75 | — | | | |
| **1995 Fees:** | | | | | $ 0.00 | $ 3,612.50 |
| **1994** | | | | | | |
| **PARTNERS:** | | | | | | |
| Pfohl | 1.25 | 1 | — | $150.00 | $ 187.50 | $ 150.00 |
| Varney | 2 | — | — | $150.00 | $ 300.00 | — |
| Peebles | 50.5 | 203 | — | $150.00 | $ 7,575.00 | $30,450.00 |
| Andrus | 8.25 | — | — | $150.00 | $ 1,237.50 | — |
| Berman | 0.75 | 12 | — | $150.00 | $ 112.50 | $ 1,800.00 |
| Berry | 13.5 | 5.5 | — | $150.00 | $ 2,025.00 | $ 825.00 |
| **OF COUNSEL:** | | | | | | |
| McCormack | — | 57.25 | — | $150.00 | — | $ 8,587.50 |
| **ASSOCIATES:** | | | | | | |
| James | — | 17.25 | — | $100.00 | — | $ 1,725.00 |
| Smith | — | 4 | — | $100.00 | — | $ 400.00 |
| Corcoran | 30.25 | — | — | $ 90.00 | $ 2,722.50 | — |
| **PARALEGALS:** | | | | | | |
| Clifford | — | 24.75 | — | $ 50.00 | — | $ 1,237.50 |
| Santoro | 16.75 | 211.5 | — | $ 50.00 | $ 837.50 | $10,575.00 |
| **1994 Hours:** | 123.35 | 536.25 | — | | | |
| **1994 Fees:** | | | | | $ 14,997.50 | $55,750.00 |
| **1993** | | | | | | |
| **PARTNERS:** | | | | | | |
| Umbrecht | 0.25 | — | — | $150.00 | $ 37.50 | — |
| Pfohl | 2.25 | — | — | $150.00 | $ 337.50 | — |
| Peebles | 29.25 | — | — | $150.00 | $ 4,387.50 | — |
| Andrus | 2 | — | — | $150.00 | $ 300.00 | — |
| Berman | 1 | 2.5 | — | $150.00 | $ 150.00 | $ 375.00 |
| Berry | 5 | 9.25 | — | $150.00 | $ 750.00 | $ 1,387.50 |
| **ASSOCIATES:** | | | | | | |
| James | 9 | — | — | $100.00 | $ 900.00 | — |
| Corcoran | 2.5 | — | — | $ 85.00 | $ 212.50 | — |
| **PARALEGALS:** | | | | | | |
| Clifford | 9.5 | — | — | $ 50.00 | $ 475.00 | — |
| **1993 Hours:** | 60.75 | 11.75 | — | | | |
| **1993 Fees:** | | | | | $ 7,550.00 | $ 1,762.50 |
| **1992** | | | | | | |
| **PARTNERS:** | | | | | | |
| Peebles | 123.5 | — | — | $150.00 | $ 18,525.00 | — |
| Berman | 4 | — | — | $145.00 | $ 580.00 | — |
| Donato | 1 | — | — | $150.00 | $ 150.00 | — |
| **ASSOCIATES:** | | | | | | |
| Berry | 101 | 8.75 | — | $100.00 | $ 10,100.00 | $ 875.00 |
| Campbell | — | 2.75 | — | $ 75.00 | — | $ 206.25 |
| Connors | 12.75 | — | — | $100.00 | $ 1,275.00 | — |
| Liddell | 81.75 | — | — | $ 85.00 | $ 6,948.75 | — |
| **PARALEGAL:** | | | | | | |
| Santoro | 16.75 | — | — | $ 50.00 | $ 837.50 | — |

| | Hours Spent on Claims Against Abou–Khadra | Hours Spent on Claims Against Mahshie | Hours & Costs Common to Both | Hourly Rate | Total Against Abou–Khadra* | Total Against Mahshie* |
|---|---|---|---|---|---|---|
| 1992 Hours: | 340.75 | 11.5 | — | | | |
| 1992 Fees: | | | | | $ 38,416.25 | $ 1,081.25 |
| **1991** | | | | | | |
| PARTNERS: | | | | | | |
| Cook | 0.25 | — | — | $150.00 | $ 37.50 | — |
| Peebles | 681.5 | 2.25 | 0.5 | $150.00 | $102,262.50 | $ 375.00 |
| -travel time | 8 | — | — | $ 75.00 | $ 600.00 | — |
| Pfohl | 10.75 | 0 | 0.25 | $150.00 | $ 1,631.25 | $ 18.75 |
| Small | 0.25 | — | — | $150.00 | $ 37.50 | — |
| Andrus | 108.25 | — | — | $150.00 | $ 16,237.50 | — |
| Berman | 0.25 | — | — | $135.00 | $ 33.75 | — |
| Murad, Jr. | 0.25 | — | — | $130.00 | $ 32.50 | — |
| ASSOCIATES: | | | | | | |
| Berry | 379.25 | 2.5 | — | $100.00 | $ 37,925.00 | $ 250.00 |
| -travel time | 9 | — | — | $ 50.00 | $ 450.00 | — |
| James | 119.5 | — | — | $100.00 | $ 11,950.00 | — |
| Connors | 6 | — | — | $ 85.00 | $ 510.00 | — |
| Liddell | 373.75 | 21 | — | $ 75.00 | $ 28,031.25 | $ 1,575.00 |
| Olds | 0.25 | — | — | $ 75.00 | $ 18.75 | — |
| Campbell | 2 | — | — | $ 75.00 | $ 150.00 | — |
| PARALEGAL: | | | | | | |
| Santoro | 416.25 | — | — | $ 50.00 | $ 20,812.50 | — |
| LAW CLERKS: | | | | | | |
| Perez | 39 | — | — | $ 50.00 | $ 1,950.00 | — |
| Bellew | 19.5 | — | — | $ 50.00 | $ 975.00 | — |
| Sullivan | 17.5 | — | — | $ 50.00 | $ 875.00 | — |
| Nordby | 14.75 | — | — | $ 50.00 | $ 737.50 | — |
| Colton | 12 | — | — | $ 50.00 | $ 600.00 | — |
| Dougherty | 13 | — | — | $ 50.00 | $ 650.00 | — |
| 1991 Hours: | 2231.25 | 25.75 | 0.75 | | | |
| 1991 Fees: | | | | | $226,507.50 | $ 2,218.75 |
| **1990** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 0 | 0.5 | 0.75 | $150.00 | $ 56.25 | $ 131.25 |
| Peebles | 0.25 | 0 | 127.5 | $150.00 | $ 9,600.00 | $ 9,562.50 |
| travel time | 0 | 0 | 12 | $ 75.00 | $ 450.00 | $ 450.00 |
| Andrus | 0 | 0 | 42.25 | $150.00 | $ 3,168.75 | $ 3,168.75 |
| travel time | 0 | 0 | 12 | $ 75.00 | $ 450.00 | $ 450.00 |
| ASSOCIATES: | | | | | | |
| Berry | 0 | 0 | 7.75 | $ 75.00 | $ 290.63 | $ 290.63 |
| James | 0 | 0 | 0.5 | $ 75.00 | $ 18.75 | $ 18.75 |
| PARALEGAL: | | | | | | |
| Santoro | 0 | 0 | 64.75 | $ 25.00 | $ 809.38 | $ 809.38 |
| LAW CLERKS: | | | | | | |
| Sciotti | 0 | 0 | 31.25 | $ 25.00 | $ 390.63 | $ 390.63 |
| Currie | 0 | 0 | 4.25 | $ 25.00 | $ 53.13 | $ 53.13 |
| 1990 Hours: | 0.25 | 0.5 | 303 | | | |
| 1990 Fees: | | | | | $ 15,287.50 | $15,325.00 |
| **1989** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 0 | 0.25 | 3 | $140.00 | $ 210.00 | $ 245.00 |
| Peebles | 0 | 2 | 187 | $140.00 | $ 13,090.00 | $13,370.00 |
| Cook | 0 | 0 | 0.5 | $145.00 | $ 36.25 | $ 36.25 |
| Canfield | 0 | 0 | 0.75 | $130.00 | $ 48.75 | $ 48.75 |
| ASSOCIATES: | | | | | | |
| Berman | 0 | 0 | 13.5 | $ 75.00 | $ 506.25 | $ 506.25 |
| Berry | 0 | 4.25 | 116.5 | $ 75.00 | $ 4,368.75 | $ 4,687.50 |
| James | 0 | 1.75 | 86.75 | $ 75.00 | $ 3,253.13 | $ 3,384.38 |
| Sprock | 0 | 0 | 1 | $ 75.00 | $ 37.50 | $ 37.50 |
| D'Eredita | 0 | 0 | 1 | $ 75.00 | $ 37.50 | $ 37.50 |
| PARALEGAL: | | | | | | |
| Kaestner | 0 | 0 | 69 | $ 25.00 | $ 862.50 | $ 862.50 |
| LAW CLERK: | | | | | | |
| Liddell | 0 | 0 | 9 | $ 25.00 | $ 112.50 | $ 112.50 |

| | Hours Spent on Claims Against Abou–Khadra | Hours Spent on Claims Against Mahshie | Hours & Costs Common to Both | Hourly Rate | Total Against Abou–Khadra* | Total Against Mahshie* |
|---|---|---|---|---|---|---|
| 1989 Hours: | 0 | 8.25 | 488 | | | |
| 1989 Fees: | | | | | $ 22,563.13 | $23,328.13 |
| **1988** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 0.25 | 0 | 7.5 | $125.00 | $ 500.00 | $ 468.75 |
| Peebles | 0 | 0 | 178 | $130.00 | $ 11,570.00 | $11,570.00 |
| Canfield | 0 | 0 | 2.5 | $120.00 | $ 150.00 | $ 150.00 |
| ASSOCIATES: | | | | | | |
| Berry | 1 | 0 | 46.25 | $ 75.00 | $ 1,809.38 | $ 1,734.38 |
| James | 0 | 0 | 39.25 | $ 75.00 | $ 1,471.88 | $ 1,471.88 |
| PARALEGAL: | | | | | | |
| Kaestner | 0 | 0 | 141.75 | $ 25.00 | $ 1,771.88 | $ 1,771.88 |
| 1988 Hours: | 1.25 | 0 | 415.25 | | | |
| 1988 Fees: | | | | | $ 17,273.13 | $17,166.88 |
| **1987** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 1.25 | 0 | 21 | $120.00 | $ 1,410.00 | $ 1,260.00 |
| Peebles | 9.25 | 23.25 | 271.25 | $110.00 | $ 15,936.25 | $17,476.25 |
| ASSOCIATES: | | | | | | |
| Berry | 30.25 | 6.5 | 145 | $ 75.00 | $ 7,706.25 | $ 5,925.00 |
| James | 0 | 0 | 1.25 | $ 75.00 | $ 46.88 | $ 46.88 |
| Wolnik | 0 | 0 | 3.5 | $ 55.00 | $ 96.25 | $ 96.25 |
| Schafer | 0 | 0 | 0.5 | $ 55.00 | $ 13.75 | $ 13.75 |
| PARALEGAL: | | | | | | |
| Kaestner | 0.5 | 0 | 213 | $ 25.00 | $ 2,675.00 | $ 2,662.50 |
| 1987 Hours: | 41.25 | 29.75 | 655.5 | | | |
| 1987 Fees: | | | | | $ 27,884.38 | $27,480.63 |
| **1986** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 3.75 | 0 | 13.25 | $110.00 | $ 1,141.25 | $ 728.75 |
| Peebles | 0 | 0 | 102 | $ 75.00 | $ 3,825.00 | $ 3,825.00 |
| Stack | 0 | 0 | 0.5 | $ 75.00 | $ 18.75 | $ 18.75 |
| ASSOCIATES: | | | | | | |
| Callahan | 0 | 0 | 49 | $ 60.00 | $ 1,470.00 | $ 1,470.00 |
| Mackey | 0 | 0 | 42.5 | $ 60.00 | $ 1,275.00 | $ 1,275.00 |
| 1986 Hours: | 3.75 | 0 | 207.25 | | | |
| 1986 Fees: | | | | | $ 7,730.00 | $ 7,317.50 |
| **1985** | | | | | | |
| PARTNERS: | | | | | | |
| Pfohl | 30 | 0 | 45.5 | $100.00 | $ 5,275.00 | $ 2,275.00 |
| Peebles | 27 | 0 | 104.5 | $ 75.00 | $ 5,943.75 | $ 3,918.75 |
| Delaney | 0.5 | — | — | $100.00 | $ 50.00 | — |
| ASSOCIATES: | | | | | | |
| Holden | 1.5 | — | — | $ 60.00 | $ 90.00 | — |
| Callahan | 4.75 | 0 | 13.75 | $ 60.00 | $ 697.50 | $ 412.50 |
| Harig (Lynn) | 3 | — | — | $ 60.00 | $ 180.00 | — |
| Reed | 3.5 | — | — | $ 60.00 | $ 210.00 | — |
| Zadworney | 3 | — | — | $ 60.00 | $ 180.00 | — |
| Mackey | 33 | — | — | $ 60.00 | $ 1,980.00 | — |
| LAW CLERK: | | | | | | |
| Fitz | 0 | 0 | 0.5 | $ 25.00 | $ 6.25 | $ 6.25 |
| 1985 Hours: | 106.25 | 0 | 164.25 | | | |
| 1985 Fees: | | | | | $ 14,612.50 | $ 6,612.50 |

* Totals determined using the following formula: (total individual hours × hourly rate) + (1/2 common hours × hourly rate).

Final Cost Determination

| | Costs for Abou–Khadra Only | Costs for Mahshie Only | Costs Common to Both | Total Against Abou–Khadra* | Total Against Mahsie* |
|---|---|---|---|---|---|
| 1995 Costs: | $ 0.00 | $ 284.02 | $ 0.00 | $ 0.00 | $ 284.02 |
| 1994 Costs: | $ 2,309.45 | $2,544.72 | $ 0.00 | $ 2,309.45 | $ 2,544.72 |
| 1993 Costs: | $ 682.75 | $ 0.00 | $ 0.00 | $ 682.75 | $ 0.00 |
| 1992 Costs: | $ 8,726.38 | $ 0.00 | $ 0.00 | $ 8,726.38 | $ 0.00 |
| 1991 Costs: | $26,907.84 | $ 0.00 | $ 111.40 | $26,963.54 | $ 55.70 |
| 1990 Costs: | $ 0.00 | $ 0.00 | $4,014.12 | $ 2,007.06 | $ 2,007.06 |
| 1989 Costs: | $ 0.00 | $ 125.00 | $6,016.25 | $ 3,008.13 | $ 3,133.13 |
| 1988 Costs: | $ 0.00 | $ 25.00 | $3,652.92 | $ 1,826.46 | $ 1,851.46 |
| 1987 Costs: | $ 0.00 | $ 0.00 | $8,793.17 | $ 4,396.59 | $ 4,396.59 |
| 1986 Costs: | $ 0.00 | $ 0.00 | $ 482.26 | $ 241.13 | $ 241.13 |
| 1985 Costs: | $ 78.40 | $ 0.00 | $1,130.26 | $ 643.53 | $ 565.13 |
| TOTAL: | | | | $50,805.02 | $15,078.94 |

\* Total determined using the following formula: (total costs of individual ) + (1/2 common costs).