**UNITED STATES of America, ex rel. Robert COUGHLIN, et al., Plaintiffs,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION and SCI Systems, Inc., et al., Defendants.**

No. 93–CV–1408.

United States District Court, N.D. New York.

Jan. 15, 1998.

Phillips & Cohen, Washington, DC (John R. Phillips, of Counsel), Dangel, Donlan & Fine, Boston, MA (Edward T. Dangel, of Counsel), Kramer & Kenyon, Binghamton, NY (Phillip J. Kramer, of Counsel), for Plaintiff Relators.

U.S. Department of Justice, Commercial Litigation Branch, Washington, DC (Joyce R. Branda, Stanley E. Alderson, Maya S. Guerra, of Counsel), for U.S.

McKenna & Cuneo, Washington, DC (Frederick M. Levy, of Counsel), Levene, Gouldin & Thompson, Binghamton, NY (David M. Gouldin, of Counsel), for defendant Lockheed Martin Federal Systems, Inc.

## MEMORANDUM-DECISION and ORDER

McAVOY, Chief Judge.

Following settlement of the instant action brought under the False Claims Act, Plaintiffs now move for an order unsealing Relators' Memorandum in Opposition to the Proposed Settlement, an order pursuant to 31 U.S.C. § 3730(d)(1) awarding the Relators a twenty-five percent share of the settlement, and an order awarding costs and attorneys' fees.

## I. BACKGROUND

Plaintiff-Relator Robert Coughlin is a former receiving inspector at what was IBM's manufacturing facility in Owego, New York. His original Complaint alleged that a prime government contractor, IBM Federal Systems Company (now Lockheed Martin Federal Systems), and one of its subcontractors, SCI Technologies, Inc., failed to test or properly inspect certain computer components manufactured for installation in computer systems for military aircraft and submarines. The Complaint also alleges that a number of the untested and improperly inspected components were defective and that IBM and SCI concealed these failures from the United States.

Upon his retirement from IBM in January, 1992, Mr. Coughlin notified the Department of Defense of his allegations. The United States conducted an extensive investigation of Relators' claims, which confirmed only to a limited extent Relators' allegations. As a result, the United States intervened in this action and negotiated a settlement with IBM, Loral Federal Systems, and Lockheed Martin Federal Systems ("Lockheed"). The proposed settlement agreement provided that Lockheed would pay the United States $200,000 and perform certain warranty repair work, worth not more than $500,000, if such work become necessary before July 1, 1997.

Contemporaneous with the United States' settlement offer, Relators' then counsel, Phillips & Cohen, petitioned the Court to withdraw as counsel. After an *in camera* review of counsel's motion to withdraw, the Court granted Phillips & Cohen's request. Thereafter, Relators retained Dangel, Donlan & Fine for purposes of opposing the settlement and proceeding with the action should the settlement not be approved by the Court.

From October, 1996 through April, 1997, Relators' new counsel conducted additional discovery in this matter and ultimately filed a lengthy objection to the proposed settlement. On July 1, 1997, the Court approved the Settlement Agreement and dismissed the action as to defendants Loral Corporation, Loral Federal Systems Company, and IBM.

## II. DISCUSSION

### A. Unsealing of Relators' Opposition to the Proposed Settlement Agreement and Attached Documents

■ Relators now seek to unseal the documents they filed in opposition to the proposed settlement agreement. In support of their request, they argue that the documents should be available to the public so that

"inquires of the plaintiff and his counsel may be answered correctly and so that the public's right to information about its government's decisions, particularly court settlements, be preserved."

Lockheed strongly opposes this request. It argues that the documents were produced under seal and are based on information provided to Relators pursuant to a confidentiality agreement.

The filing and service requirements of the False Claims Act (the "Act"), 31 U.S.C. § 3730(b)(2), were passed by Congress as part of substantial revisions to the False Claims Act in 1986. Legislative history reveals that the "overall intent in amending the *qui tam* section of the False Claims Act [was] to encourage more private enforcement suits." S.Rep. No. 345, 99th Cong., 2d Sess. 23–24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–89. However, the government was concerned that *qui tam* claims might overlap with or tip a defendant off to pending criminal investigations. *Id.* at 24, *reprinted in* 1986 U.S.C.C.A.N. at 5289. As the Second Circuit recently noted,

> the sixty-day sealing period, in conjunction with the requirement that the government, but not the defendants, be served, was "intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action." A secondary objective was to prevent defendants from having to answer complaints without knowing whether the government or relators would pursue the litigation.

*U.S. ex rel. Pilon v. Martin Marietta Corp.,* 60 F.3d 995, 999 (2d Cir.1995) (*quoting* S.Rep. No. 345, 99th Cong., 2d Sess. 23–24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5288–89).

These are not, however, the only interests protected by the service and sealing provisions in the Act. The Second Circuit went on to note that

> [o]ther interests not addressed by this legislative history are also protected. For example, a defendant's reputation is protected to some degree when a meritless *qui tam* action is filed, because the public will know that the government had an opportunity to review the claims but elected not to pursue them. In addition, when a potentially meritorious complaint is filed, a defendant may be willing to reach a speedy and valuable settlement with the government in order to avoid the unsealing.

*Pilon,* 60 F.3d at 999.

Section 3730 of the Act also envisions the lifting of the seal as to certain documents, particularly the relator's complaint: "The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed." 31 U.S.C. § 3730(b)(3). However, section 3730 only provides for the unsealing of the complaint and no other section of the False Claims Act references the unsealing of any other documents filed with the court.

Only three courts appear to have addressed the issue presented here: *U.S. ex rel. O'Keefe v. McDonnell Douglas Corp.,* 902 F.Supp. 189, 190–92 (E.D.Mo.1995), *United States v. CACI Int'l Inc.,* 885 F.Supp. 80, 83 (S.D.N.Y.1995), and *United States ex rel. Mikes v. Straus,* 846 F.Supp. 21, 23 (S.D.N.Y.1994). In each instance the court allowed limited disclosure of documents filed *in camera.* *O'Keefe,* 902 F.Supp. at 192; *CACI,* 885 F.Supp. at 83; *Mikes,* 846 F.Supp. at 23.

All three courts reasoned that because the False Claims Act permits *in camera* submissions, the statute necessarily gives the court discretionary authority over whether to maintain the secrecy of such submissions. *O'Keefe,* 902 F.Supp. at 192; *CACI,* 885 F.Supp. at 81; *Mikes,* 846 F.Supp. at 23. For example, in *United States ex rel. Mikes v. Straus,* the United States submitted materials *in camera* seeking extensions of time to decide whether to intervene, pursuant to section 3730(b)(3). The government decided not proceed in the case and agreed with all parties that all material should be unsealed except for a particular status report. The *Mikes* court held that because the document did not contain any confidential information,

it should be unsealed along with the rest of the sealed materials in the court file. 846 F.Supp. at 23. The court concluded that "[t]he *Qui Tam* statute evinces no specific intent to permit or deny disclosure of *in camera* material as a case proceeds" and that "the statute necessarily invests the court with authority to preserve secrecy of such items or make them available to the parties." *Mikes,* 846 F.Supp. at 23.

The *Mikes* court found such authority analogous to the discretion conferred by Rule 26(c)[1] of the Federal Rules of Civil Procedure. 846 F.Supp. at 23. Thus, the court exercised its discretion consistent with Rule 26(c), by balancing the need for and harm risked by disclosures sought by the defendant. *Mikes,* 846 F.Supp. at 23. In making its determination, the court noted:

> Where disclosure of confidential investigative techniques, of information which could jeopardize an ongoing investigation, or of matters which could injure non-parties is requested, courts have recognized the interest of the public in denying or deferring disclosure.

*Id.* After examining the status report *in camera,* the *Mikes* court concluded that the document described "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized in the regular course of business" and that therefore, "there [was] no ground for retaining the . . . [r]eport under seal." *Id.*

Similarly, in *CACI* the court found that the unsealed documents did not "disclose any confidential investigative techniques, information which could jeopardize an ongoing investigation, or matters which could injure nonparties. Indeed . . . the documents, save for the complaint, describe routine, general investigative procedures and do not implicate specific people or provide any substantive details." *CACI*, 885 F.Supp. at 83. In *O'Keefe,* the Court concluded:

> The government's motions for extensions of time and accompanying memoranda and affidavits differ from those at issue in

*Straus* and *CACI* because the sealed materials before this Court do provide some substantive details regarding the government's methods of investigation. There would be some harm associated with the disclosure of such details. However, various other documents filed prior to the lifting of the seal do not contain any information that would harm the government.

902 F.Supp. at 192.

Upon reviewing Relators' Opposition to the Proposed Settlement Agreement, the Court finds that the document does not contain substantive details regarding the government's methods of investigation, particularly in light of the fact that the government does not appear to oppose the disclosure. As far as Lockheed's argument that the seal protects Lockheed's "excellent reputation," this is an inadequate basis to continue the sealing order. As the Second Circuit noted in *U.S. ex rel. Pilon v. Martin Marietta Corp.,* "a defendant's reputation is protected to some degree when a meritless *qui tam* action is filed, because the public will know that the government had an opportunity to review the claims but elected [to settle]." 60 F.3d at 999.

■ After balancing the need for and harm risked by the disclosure sought by Relators, the Court concludes that lifting the seal on Relators Opposition to the Proposed Settlement is warranted. As to Relators request that the Court void the Confidential Disclosure Agreement ("CDA") between Lockheed and Relators, Relators have provided no justification for such relief. Accordingly, the CDA remains in effect and Relators may not use the Court's present unsealing order to justify the further disclosure of any documents (including the attachments to its Opposition to the Proposed Settlement) covered by the CDA.

**B. Relator's Share of the Settlement**

■ The False Claims Act provides:
> If the Government proceeds with an action brought by a person under subsection (b),

---

1. Rule 26(c) governs a court's ability to grant protective orders to preserve confidential infor-

mation disclosed during discovery.

such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action.

31 U.S.C. § 3730(d)(1). Not surprisingly, Relators seek a 25% share of the government's recovery in this action, which they value at $700,000. The government argues that Relators are only entitled to a ⅛ share of $200,000. This dispute is illustrative of the course of conduct in this litigation. Although a settlement was negotiated in September, 1996, the Relators litigated the Court's approval of the settlement for another year.

The Act specifically states that a relator is entitled to a percentage of the settlement proceeds, within the applicable range, to "the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). As the government correctly notes, percentage awards above 15% are rare and occur when the relator goes above and beyond the norm by substantially contributing to the prosecution of the action. "[T]he argument that the maximum recovery should be reserved for those cases where substantial assistance on the part of the relators continues throughout discovery and trial rather than where settlement is achieved is compelling. Otherwise, if the maximum percentage was awarded in cases that settled, there would be no way to encourage and reward a relator who assists throughout complex pretrial proceedings and a lengthy trial." *U.S. v. Covington Technologies Co.,* 1991 WL 643048, *1 (C.D.Cal.1991).

For example, in *U.S. ex rel. Burr v. Blue Cross and Blue Shield of Florida, Inc.,* 882 F.Supp. 166 (M.D.Fla.1995), the relator instigated an investigation by several governmental agencies that lasted over three years, during which the relator repeatedly objected to being left out of the process. The relator was permitted limited discovery regarding the proposed settlement of the action, which she vigorously opposed. In awarding a 15% share of the settlement the *Burr* court stated:

Although a relator may be entitled to the statutory maximum percentage in situations where the relator has suffered personal or professional hardship, no such showing has been made in the present case. In fact, the Relator fails to even address this point and relies instead on bold self-appreciation for her efforts. However, the Court finds that although the Relator may have initiated this action, her contribution to the successful settlement of this matter was minimal at best.

882 F.Supp. at 169.

After reviewing Relators contributions here, the Court declines to grant them their requested 25% share of the settlement. First, Mr. Coughlin did not report the suspected fraud until after he retired from IBM in January, 1992. Second, Relators appear to have hindered the investigation by opposing the government's repeated motions for extensions of the seal in order to continue its investigation. Third, Relators vigorously opposed the settlement of this matter. For these reasons, the Court awards Relators a 15% share.

As to the value of the settlement, Relators argue that the obligation to perform warranty work should be added to the valuation. However, Relators provide no legal support for this assertion. Under the terms of the settlement, IBM/Lockheed agreed to provide certain warranty repair work, worth not more than $500,000, *if such work became necessary before July 1, 1997.* If any warranty work was performed, the value of that work would be added to the settlement valuation. However, the record demonstrates that no such warranty work ever became necessary. Accordingly, the value of the settlement is limited to the $200,000 cash payment made to the government.

For the foregoing reasons, Relators share of the settlement is $30,000 (15% of $200,-000).

### C. Attorneys' Fees and Costs

The Supreme Court has held that to determine the amount of "reasonable attorney's fees," the Court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's

attorneys by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The operative term is "reasonable."

### i. Lodestar Figure—Reasonable Rate

To determine the hourly rate, the Supreme Court has adopted a marketplace model, *Blum*, 465 U.S. at 896, which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. Rensselaer*, 663 F.Supp. 743, 745 (N.D.N.Y.1987); *see also Levy v. Scranton*, 1992 WL 265936 (N.D.N.Y. 1992); *Auburn Enlarged City School District v. Coastal Environmental Safety and Control, Inc.*, 1990 WL 19139 (N.D.N.Y. 1990). The district court also considers other rates which have been awarded in similar cases in the same district. *See, e.g., Miner v. City of Glens Falls*, 1992 WL 349668 (N.D.N.Y.1992), *aff'd*, 999 F.2d 655 (2d Cir. 1993).

Relators' counsel argue that because there are few plaintiff's *qui tam* lawyers with sufficient defense procurement specialization, they are entitled to a higher hourly rate than that provide local practitioners. As stated already, it is customary to use the hourly rates employed in the district in which the reviewing court sits; courts generally have adhered to this rule whether the attorney involved was local or non-local. *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir.1983). The Second Circuit and other circuits "have strayed from this rule only in the rare case where the 'special expertise' of non-local counsel was essential to the case, it was clearly shown that local counsel was unwilling to take the case, or other special circumstances existed." *In re Agent Orange Product Liability Litigation*, 818 F.2d 226, 232 (2d Cir.1987); *see also Polk*, 722 F.2d at 25; *Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 140–41 (8th Cir.1982) (in banc).

In awarding a national hourly rate, the Second Circuit in *In re Agent Orange Product Liability Litigation* noted that "the use of national hourly rates in exceptional multiparty cases of national scope, where dozens of non-local counsel are involved, appears to be the best available method of ensuring adherence to the principles of the lodestar analysis." 818 F.2d at 233. However, the court expressly limited the use of national rates:

> In granting the district court this discretion, however, we caution that such rates should be employed only in the exceptional case presenting problems similar to those presented here. We further caution that, even in similar cases, national hourly rates should be employed only when the district court is *presented with an adequate evidentiary basis on which to fix such rates.*

*In re Agent Orange*, 818 F.2d at 233 (emphasis added).

Arguably the present situation shares some similarities with that facing the court in *In re Agent Orange*. Nevertheless, this Court's analysis is made considerably easier by the fact that both of Relators' counsel have failed to present an evidentiary basis, let alone an adequate evidentiary basis, on which to fix the rates they seek. Accordingly, the local rates must be applied.

After reviewing cases in this district, the Court will apply the prevailing market rates found within the Northern District of New York in its calculation of an award of attorneys' fees as follows:

| Attorney | Type of Work | Hourly Rate |
| --- | --- | --- |
| Partner | Legal | $150 |
| Associate | Legal | $100 |

*See, e.g., Abou–Khadra v. Bseirani*, 971 F.Supp. 710, 718 (N.D.N.Y.1997) ("In a survey of cases, this court finds that $150 per hour is clearly the prevailing rate for partners during the 1991–1995 phase."); *Equal Employment Opportunity Comm'n v. American Fed'n of State, County and Mun. Employees*, 1996 WL 663971 (N.D.N.Y.1996) ($150 per hour reasonable for partner with 20 years experience); *Haley v. Pataki*, 901 F.Supp. 85, 89 (N.D.N.Y.1995), *aff'd*, 106 F.3d 478 (2d Cir.1997) ($150 per hour reasonable for a partner); *Segarra v. Messina*, 158 F.R.D. 230, 235 (N.D.N.Y.1994) (same); *Greenwich Citizens Comm. v. County of*

*Warren,* 1994 WL 631212 (N.D.N.Y.1994) (same).

However, not all functions are compensated at the full hourly rate. The decision to compensate an attorney for his travel time falls within the district court's discretion. *Peterson v. Foote,* 1994 WL 116450, *3 (N.D.N.Y.1994), *aff'd,* 48 F.3d 1212 (2d Cir. 1994). "Recovery for travel time is usually granted at a reduced rate rather than at an attorney's full rate." *Auburn Enlarged City Sch. Dist.,* at *2; *see also Schenectady News, Inc. v. City of Schenectady,* 1988 WL 50653, *2 (N.D.N.Y.1988). In this district, requested rates for travel time are reduced when the court finds that time spent during travel is unproductive and demands a lower rate. *Peterson,* at *3 (50% reduction in rate); *Boston v. Brown,* 1996 WL 221561, *6 (N.D.N.Y. 1996) (requested rate of $85 per hour reduced to $50 per hour); *EEOC v. AFSCME,* 1996 WL 663971, at * 7 (50% reduction in rate).

Accordingly, the Court will fix an hourly rate for travel time at $75.00 for partners and $50.00 for associates.

### ii. Lodestar Figure—Reasonable Hours

In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). From these records, the Court determines whether the hours spent on the litigation were "reasonable" so as to warrant full reimbursement.

Here, Lockheed challenges the reasonableness of both the overall time spent by Relators' attorneys and the substance of much of the work performed during this litigation. Of course, the two matters are interrelated and will be addressed together.

The Court notes that Lockheed has raised a host of objections to the hours claimed. Due to the sheer volume of Lockheed's objections, the Court will not address them all. Rather, the Court looks to the reasonableness of the hours based upon Lockheed's major objections.

### 1) Excessive Hours

Lockheed objects to many of the hours claimed as excessive. The Court disagrees. As a guide to evaluating billing records, the Second Circuit has held that it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992).

Here, the time records clearly provide the required elements for a successful fee application. After reviewing the submitted records in light of this standard and its own experience, the Court concludes that the billing entries do not offend its sense of reasonableness.

### 2) Use of Co–Counsel

Lockheed challenges the use of co-counsel as unreasonable and the staffing of this case generally. "There is no per se rule against the use of multiple attorneys, however, and the court is given considerable latitude in determining the reasonableness of the utilization of co-counsel." *Macko v. General Motors Corp., Fisher Body Div.,* 1988 WL 73446 at *2 (N.D.N.Y.1988). The Second Circuit has left the determination of redundancy in fee applications to the discretion of the district court:

> [P]revailing parties are not barred as a matter of law from bringing a second attorney to depositions or an extra lawyer to court to observe and assist.... Of course, a trial judge may decline to compensate hours spent by collaborating lawyers or may limit the hours allowed for specific tasks, but ... such decisions are best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation.

*New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir. 1983) (citations omitted). The guiding principle to determine whether redundancy has occurred is the "degree of effort reasonably needed to prevail in the litigation." *Carey,* 711 F.2d at 1146. In exercising that discre-

tion, the court must make an "assessment of what is appropriate for the scope and complexity of the particular litigation." *Carey,* 711 F.2d at 1146.

In light of the complex nature of this case, the Court cannot conclude that the use of multiple attorneys was unnecessary or extravagant.

### iii. Lodestar Calculation

The lodestar amount has been calculated as follows:

| Attorney | Hours [2] | Rate | Total |
|---|---|---|---|
| *Phillips & Cohen* | | | |
| Mary Cohen | 20.75 | $150 | $ 3,112.50 |
| –travel | 10.00 | $ 75 | $ 750.00 |
| Janet Goldstein | 55.00 | $150 | $ 8,250.00 |
| John Phillips | 15.00 | $150 | $ 2,250.00 |
| –travel | 6.00 | $ 75 | $ 450.00 |
| Eric Havian | 130.75 | $150 | $19,612.50 |
| –travel | 154.00 | $ 75 | $11,550.00 |
| Linda Popejoy | 254.00 | $100 | $25,400.00 |
| –travel | 24.75 | $ 50 | $ 1,237.50 |
| | | Total: | $72,612.50 |
| *Kramer & Kenyon* | | | |
| Phillip Kramer | 22.00 | $100 [3] | $ 2,200.00 |
| *Dangel, Donlan & Fine* | | | |
| Alex Bok | 115.65 | $150 | $17,347.50 |
| –travel | 22.75 | $ 75 | $ 1,706.25 |
| Edward Dangel | 10.50 | $150 | $ 1,575.00 |
| | | Total: | $20,628.75 |

Once the lodestar amount is calculated there is a strong presumption that this figure constitutes a reasonable amount. *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992); *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641–42, 120 L.Ed.2d 449 (1992). The burden falls on the party advocating an adjustment to justify that a change is necessary. *United States Football League v. National Football League,* 887 F.2d 408, 413 (2d Cir.1989) (*citing Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 118 (3d Cir.1976)).

After reviewing Lockheed's arguments in opposition, the Court sees no reason to de-

part from the previously calculated reasonable lodestar amount. Accordingly, Relators' counsel are due the following amounts in attorneys' fees: $72,612.50 to Phillips & Cohen; $2,200.00 to Kramer & Kenyon; and $20,628.75 to Dangel, Donlan & Fine.

### iv. Costs and Expenses

The costs associated with litigation are generally recoverable if they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 283 (2d Cir.1987) (*citing Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C.Cir.1984)). The scope of allowed costs should include those that are "incidental and necessary" to the representation of the client. *Id.* (*citing Northcross v. Board of Educ.,* 611 F.2d 624, 639 (6th Cir.1979)). Under this rule, costs are not allowed if they cannot be attached to the advancement of a specific claim, or if they are so general that they could be placed under the cost umbrella of overhead or office expense. *Abou–Khadra,* 971 F.Supp. at 720.

With one exception, the Court finds the requested amounts reasonable expenses, consistent with those granted in the course of providing legal services and usually charged to a fee-paying client. *See Thomas v. Board of Educ.,* 505 F.Supp. 102, 105 (N.D.N.Y. 1981) (allowing recovery for travel costs, telephone bills and photocopying costs); *Fiacco v. City of Rensselaer,* 663 F.Supp. 743, 746 (N.D.N.Y.1987) (allowing recovery for postage and telephone calls).

The Court takes exception to Phillips & Cohen's inclusion of research fees in their application for costs. The Second Circuit has held that the cost of electronic computer research is not recoverable in a motion for attorney's fees and costs. *United States v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2d Cir.1996) (*citing Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chica-*

---

**2.** On some dates, the daily time sheets do not designate travel and non-travel time. Thus, on those days that an attorney has claimed travel time, the Court assumed that travel time was one-half of the total time claimed for the day.

**3.** Phillip Kramer's requested hourly rate is $100.00.

*go,* 38 F.3d 1429, 1441 (7th Cir.1994)). Therefore, the Court denies the recovery of any costs for research. *Accord, Abou–Khadra,* 971 F.Supp. at 721.

Thus, the Court awards the following costs: $9,074.53 to Phillips & Cohen; $149.17 to Kramer & Kenyon; and $2,344.00 to Dangel, Donlan & Fine. Of course, Relators' counsel are entitled to fees and expenses incurred in litigating the present requests; the attorneys are directed to submit affidavits calculating these amounts.

## III. CONCLUSION

In summary, the Court hereby lifts the seal on Relators' Opposition to the Proposed Settlement (Docket # 63). However, the CDA remains in effect and Relators may not use the Court's present unsealing order to justify the further disclosure of any documents (including the attachments to its Opposition to the Proposed Settlement) covered by the CDA.

Furthermore, the Court sets Relators share of the settlement at $30,000 and awards costs and attorneys fees in the following amounts: $81,687.03 to Phillips & Cohen; $2,349.17 to Kramer & Kenyon; and $22,972.75 to Dangel, Donlan & Fine.

**IT IS SO ORDERED.**