**Paul AMATO, Plaintiff,**

**v.**

**CITY OF SARATOGA SPRINGS, Saratoga Springs Police Department, Sergeant Flanagan, Lt. Lynn Thomas, Police Chief Kenneth King, Commissioner Lewis J. Benton, III, Defendants.**

**No. 95–CV–1510.**

United States District Court, N.D. New York.

Jan. 20, 1998.

17. *See RTC v. Diamond, supra,* 45 F.3d at 670.

David Brickman, Albany, NY, for Plaintiff.

Fitzgerald Morris Law Firm, Glens Falls, NY, Veronica Carrozza O'Dell, of counsel, for Defendants.

## MEMORANDUM–DECISION and ORDER

McAVOY, Chief Judge.

## I. BACKGROUND

This action arises out of plaintiff Paul Amato's arrest and booking at the Saratoga Springs Police Department ("the Department") on May 26, 1994. Plaintiff alleged that while he was being booked, defendants Robert Flanagan and Lynn Thomas[1] used excessive force on him.

After a four day jury trial, the jury found defendant Flanagan liable to Plaintiff for using excessive force during Plaintiff's booking and found defendant Thomas liable for failure to intercede.[2] The jury awarded Plaintiff $1 in nominal damages and found that punitive damages were warranted against defendant Flanagan. A second trial on the issue of punitive damages was held; the jury awarded Plaintiff $20,000 in punitive damages against defendant Flanagan. The Court, however, reduced the punitive damages award to $15,000.

Plaintiff now moves for costs and attorneys' fees.

## II. DISCUSSION

The Supreme Court has held that to determine the amount of "reasonable attorney's fees," the Court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's attorneys by a reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The operative term is "reasonable."

### A. Lodestar Figure—Reasonable Hours

■ In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work per-

1. By stipulation and order signed by the Court on June 2, 1997, Karen Thomas was appointed personal representative of defendant Lynn Thomas for the purposes of this action.

2. The Court erroneously entered the Judgment in this case stating that the jury found no cause of action in favor of defendant Lynn Thomas. The Court's Amended Judgment correctly reflects that the jury found defendant Lynn Thomas liable under the theory of supervisory liability and for failure to intercede.

formed. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). From these records the Court determines whether the hours spent on the litigation were "reasonable" so as to warrant full reimbursement.

■ Defendants challenge the reasonableness of both the overall time spent by Plaintiff's attorney and the substance of much of the work performed during this litigation. Defendants also argue that Mr. Brickman's application is grossly inadequate and defective.

■ To recover attorneys' fees, Mr. Brickman's time records must be made contemporaneously with the associated work. *Lewis,* 801 F.2d at 577. These records must also "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey,* 711 F.2d at 1148. Such records are necessary so that the Court "[m]ay determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987).

Even a cursory review of Mr. Brickman's affidavit demonstrates that he has submitted grossly inadequate billing records. To illustrate, the following are Mr. Brickman's claimed hours for September, 1996 (almost a year after he filed the Complaint), reprinted here in the exact format he submitted to the Court:

September 1996

| 1 | review research | 4.5 |
|---|---|---|
| 1 | review discovery response | 1.5 |
| 2 | review research | 3 |
| 2 | prepare deposition questions | 2.5 |
| 3 | review research | 3.5 |
| 4 | review research | 4 |
| 5 | prepare deposition questions | 2 |
| 5 | review research | 4.5 |
| 6 | review research | 5 |
| 7 | review research | 5.5 |
| 8 | review research | 4.5 |
| 9 | depositions | 2 |
| 9 | travel | 1 |
| 9 | review research | 3.5 |
| 10 | review file | 2 |
| 10 | review research | 3 |
| 11 | eview deposition transcripts | 3.5 |
| 11 | review research | 2.5 |
| 12 | research | 3 |
| 12 | review research | 3.5 |
| 13 | review research | 4 |
| 20 | review deposition transcripts | 2.5 |
| 20 | review research | 3.5 |
| 22 | review research | 7.5 |
| 23 | review research | 4 |
| 23 | review discovery response | 3.5 |
| 24 | review research | 2.5 |
| 25 | review research | 4.5 |
| 26 | review research | 3.5 |

(Brickman Aff., Ex. 2 at 21–21).

These entries are vague and provide an inadequate basis for this Court to determine the reasonableness of Mr. Brickman's claimed hours. *Accord, Dailey v. Societe Generale,* 915 F.Supp. 1315, 1328 (S.D.N.Y. 1996) ("entries listed simply as 'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive"), *aff'd in relevant part,* 108 F.3d 451 (2d Cir.1997); *Pressman v. Estate of Steinvorth,* 886 F.Supp. 365, 367 (S.D.N.Y.1995) (holding that plaintiff is not entitled to reimbursement for work described in invoices only as "telephone conversation," "prepare correspondence," or "review of file").

As other courts have stated, "[i]t is impossible to judge the reasonableness of spending two hours on an outline, or five hours on writing and research if the topic of the work is not disclosed." *Soler v. G & U, Inc.,* 658 F.Supp. 1093, 1097 (S.D.N.Y.1987). Permitting Plaintiff's counsel to recover on the basis of such vague entries "would reward him for maintaining time records that complicate the court's task of assessing reasonable attorney's fees and that augment the risk of error in the amount awarded." *Chambless v. Masters, Mates & Pilots Pension Plan,* 1988 WL 80170, *5 (S.D.N.Y.1988).

■ Furthermore, even if Mr. Brickman's contemporaneous time records contained the minimal level of specificity required, his claimed hours are so shockingly high as to be per se unreasonable. In his affidavit, Mr. Brickman summarizes his hours as follows:

| | |
|---|---|
| In court and depositions | 66 |
| Prepare trial questions | 330 |
| Prepare deposition questions | 411 |
| Research | 656.5 |
| Pleadings and motions | 175.5 |
| Consultations and investigations | 61 |
| Review discovery and file | 197.5 |

(Brickman Aff. ¶ 13). Mr. Brickman states in his affidavit that he is a solo practitioner "with *no staff* other than a secretary." (Brickman Aff. ¶ 6). If Mr. Brickman *billed* 8 hours a day, five days a week, he spent the equivalent of 16½ weeks devoted only to research on this case; 10 weeks preparing deposition questions; 8 weeks preparing trial questions; 5 weeks reviewing discovery and the file; 4½ weeks preparing pleadings and motions; and 3 weeks on other matters related to this case.

Mr. Brickman filed the instant action on October 23, 1995, and the case went to trial on July 29, 1997. Based on Mr. Brickman's claimed hours, in the 21 months this case was active he devoted 1,897.50 hours to this matter, consuming the equivalent of 47 weeks of billable time wherein he would have worked on this matter exclusively.

The fee applicant is obligated to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 103 S.Ct. at 1939. As a guide to evaluating these records the Second Circuit has held that it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992).

The hours claimed by Mr. Brickman are unreasonable for at least two reasons. First, he is claiming hours that no client would pay. His request for 656½ hours for research ($114,887.50 at his requested rate of $175), for example, strains the definition of good faith. Second, this was a relatively straightforward excessive force case, involving a settled area of law, five defendants, one plaintiff, and very limited damages. *See Carey*, 711 F.2d at 1146 (a court must make an "assessment of what is appropriate for the scope and complexity of the particular litigation."). The Court is intimately aware of the discovery in this case and both sides' motion practice; the 1,897.5 hours claimed by Mr. Brickman is exorbitant. *See Clarke*, 960

F.2d at 1153 ("This was not a complex case.... The case did not involve any novel areas of law. Clarke's post-trial motions were neither complicated nor abstruse. In short, the record supports the district court's ruling that Clarke requested excessive attorney's fees." ). As Defendants correctly note, "[c]ounsel for a prevailing party is entitled to a reasonable fee, not a legal degree." (Defs' Mem. at 6).

Because the Court is faced with both an unreasonably high request for hours and grossly inadequate specificity in the proffered billing records, the Court is tempted to deny Mr. Brickman's request for attorneys' fees outright. However, in light of the fact that some effort was evidently expended on behalf of his client, the Court will reduce the number of hours claimed by *90%*. Mr. Brickman is entitled to 189.75 hours (10% of 1,897.5).

### B. Lodestar Figure—Reasonable Rate

■ The Supreme Court has adopted a *marketplace model* to determine the appropriate hourly rate, *see Blum*, 465 U.S. at 896, which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. Rensselaer*, 663 F.Supp. 743, 745 (N.D.N.Y. 1987); *see also Levy v. Scranton*, 1992 WL 265936 (N.D.N.Y.1992); *Auburn Enlarged City School District v. Coastal Environmental Safety and Control, Inc.*, 1990 WL 19139 (N.D.N.Y.1990). The district court may also consider other rates that have been awarded in similar cases in the same district. *See, e.g., Miner v. City of Glens Falls*, 1992 WL 349668 (N.D.N.Y.1992), *aff'd*, 999 F.2d 655 (2d Cir.1993).

■ Mr. Brickman seeks $175 per hour, which he "believe[s] [is] the prevailing rate for attorneys in the Northern District of New York." (Brickman Aff. ¶ 16). Other than his bald assertion as to the rate he believes he is entitled to, however, Mr. Brickman provides no support for his claimed $175 an hour rate. Not only has he failed to offer any evidence of the prevailing market rate for similar cases by attorneys of comparable skill and experience, he does not even specify the rate he charges his fee paying clients—a

deficiency that leads the Court to presume his actually rate is significantly lower than the $175 an hour he now seeks.

In *Chambless v. Masters, Mates & Pilots Pension Plan*, 1988 WL 80170 (S.D.N.Y. 1988), the court was faced with a similar situation where the plaintiff had not submitted information such as "evidence of the fee applicant's rates during the relevant time period" or even rates his own counsel would customarily charge, given that the "actual rate that applicant's counsel can command in the market is itself highly relevant proof of the prevailing community rate." 1988 WL 80170 at *10. Accordingly, the *Chambless* court concluded: "Such submissions do not constitute 'specific evidence of the prevailing community rate for the type of work for which [plaintiff] seeks an award.'" *Id.* at *10 (citation omitted).

Furthermore, Mr. Brickman's claimed rate of $175 per hour is unsupportable. The prevailing market rates found within the Northern District of New York are generally no more than $150 per hour for practitioners with significant experience. *See, e.g., Abou-Khadra v. Bseirani*, 971 F.Supp. 710, 718 (N.D.N.Y.1997) (Munson, J.) (finding $150 per hour is the prevailing rate for partners); *Equal Employment Opportunity Comm'n v. American Fed'n of State, County and Mun. Employees*, 1996 WL 663971 (N.D.N.Y.1996) (McCurn, J.) ($150 per hour reasonable for partner with 20 years experience); *Haley v. Pataki*, 901 F.Supp. 85, 89 (N.D.N.Y.1995) (McAvoy, J.) ($150 per hour reasonable for a partner), *aff'd*, 106 F.3d 478 (2d Cir.1997); *Hannigan*, 1997 WL 10971 at *8 (Scullin, J.) ($100 per hour is reasonable for associates); *Segarra v. Messina*, 158 F.R.D. 230, 235 (N.D.N.Y.1994) (McAvoy, J.) ($100 per hour is reasonable for associates).

Mr. Brickman admits that he has only handled one other claim of excessive force in a § 1983 action in federal court. This inexperience is evident in the 656.5 hours he claims for research. Because Mr. Brickman has provided no evidence upon which the

Court can set his hourly rate, the Court will award him $100 per hour—the current rate for associates—due to his lack of experience with federal practice.

## C. Lodestar Calculation

■■■ The lodestar amount has been calculated as follows: 189.75 hours at $100 per hour = $18,975.00. "The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434; *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974) (listing factors to be considered in determining fee award).[3] On the other hand, "there is a 'strong presumption' that the lodestar figure represents the 'reasonable fee.'" *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992) (*quoting City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992)). The party advocating an adjustment bears the burden of proof in establishing its necessity for a reasonable fee award. *See United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989).

■■■ In this case, Plaintiff's lawsuit "involve[ed] a common core of facts ... [and] related legal theories." *Hensley*, 461 U.S. at 435. Consequently, instead of attempting to dissect the case into discrete claims, the Court will, as the Supreme Court has suggested, "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The Second Circuit has expressly rejected a requirement in civil rights cases that an award of attorneys' fees be computed in strict proportion to the degree of success a plaintiff has achieved. *See Lunday v. City of Albany*, 42 F.3d 131, 134–35 (2d Cir.1994);

---

3. While many of these factors are now considered to be subsumed in the calculation of the lodestar, *see Dague v. City of Burlington*, 935 F.2d 1343, 1359 (2d Cir.1991), *rev'd in part on other grounds*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), in cases in which only partial success is achieved the lodestar may be reduced. *See Grant*, 973 F.2d at 101; *Loper v. New York City Police Dept.*, 853 F.Supp. 716, 723 (S.D.N.Y.1994).

*Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 525–28 (2d Cir.1991). The Court nevertheless recognizes that a number of the original claims and two of the six defendants were dismissed on summary judgment.

In determining the amount of adjustment necessary to adequately compensate the prevailing party for his limited success, the Court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941. The Court finds that it would be impossible to parse out certain work and identify it as being less important to the overall outcome of the litigation. Rather, the Court will adjust the lodestar by ⅛ to account for the somewhat limited nature of Plaintiff's success. Plaintiff's modified lodestar is thus $16,128.75 (85% of $18,795).

▇▇▇▇ Defendants also argue that Plaintiff's fee award should be reduced because they made a Rule 68 offer of settlement in the amount of $150,000 on March 7, 1997, which Plaintiff rejected. Pursuant to Rule 68, "[i]f the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. The "costs incurred after making the offer" include attorneys' fees. *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Moreover, the "judgment finally obtained by the offeree" includes both the jury verdict as well as the pre-settlement fees and costs ultimately awarded by the court. *See Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir.1986).

According to Plaintiff's Bill of Costs, $2,409.28 in expenses were incurred prior to March 7, 1997. As outlined in Mr. Brickman's billing records, he spent 1,426.5 hours on this case prior to March 7, 1997. After reducing these hours by 90% as discussed above, Plaintiff had incurred $14,265.00 in attorneys' fees as of March 7, 1997 (142.65 hours at $100 per hour). Based on these calculations, Defendants' Rule 68 offer of $150,000 significantly exceeded the judgment finally obtained by the offeree as well as the pre-settlement fees and costs—a total of

$31,675.28 ($15,001 verdict + $14,265 in fees + $2,409.28 in costs).

Consequently, Plaintiff's fee award must not include any fees and costs incurred after the March 7, 1997 offer. After reviewing Mr. Brickman's records, the Court finds that 471 hours were expended after March 7, 1997. Thus, 24.8% of the total fee claimed by Mr. Brickman is not recoverable because it represents work after March 7, 1997 (471 hours after 3/7/97 divided by 1,897.50 total hours claimed). Consequently, Plaintiff's lodestar must be reduced by 24.8% to $12,128.82.

### D. Costs and Expenses

▇▇▇▇ The costs associated with litigation are generally recoverable if they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 283 (2d Cir.1987) (*citing Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C.Cir.1984)). The scope of allowed costs should include those that are "incidental and necessary" to the representation of the client. *Id.* (*citing Northcross v. Board of Educ.,* 611 F.2d 624, 639 (6th Cir.1979)). Under this rule, costs are not allowed if they cannot be attached to the advancement of a specific claim, or if they are so general that they could be placed under the cost umbrella of overhead or office expense. *Abou–Khadra,* 971 F.Supp. at 720.

As to those expenses incurred prior to Defendants' Rule 68 offer, the Court finds the requested amounts reasonable expenses, consistent with those granted in the course of providing legal services and usually charged to a fee-paying client. *See Thomas v. Board of Educ.,* 505 F.Supp. 102, 105 (N.D.N.Y. 1981) (allowing recovery for travel costs, telephone bills and photocopying costs); *Fiacco v. City of Rensselaer,* 663 F.Supp. 743, 746 (N.D.N.Y.1987) (allowing recovery for postage and telephone calls).

Thus, the Court awards Plaintiff $2,409.28 in costs.

### III.  CONCLUSION

In summary, the Court awards costs and attorneys' fees against defendants Robert Flanagan and Lynn Thomas in the following amounts:  $12,128.82 in attorneys' fees and $2,409.28 in costs.

**IT IS SO ORDERED.**