**Margaret A. Naughton MARSHALL, Plaintiff,**

v.

**STATE OF NEW YORK DIVISION OF STATE POLICE, James P. McMahon, in his official capacity as Superintendent of the New York State Division of State Police, David M. Luitweiler, in his official capacity as former First Deputy Superintendent of the New York State Division of State Police, Francis A. Defrancesco, in his official capacity as Chief Inspector of the New York State Division of State Police, and Thomas A. Constantine, in his official capacity as former Superintendent of the New York State Division of State Police, Defendants.**

No. 95–CV–806.

United States District Court, N.D. New York.

Dec. 11, 1998.

Higgins, Roberts Law Firm, Schenectady, NY (Maryanne E. Low–Haviland, of counsel), for Plaintiff.

Ruberti, Girvin Law Firm, Albany, NY (Gregg T. Johnson, of counsel), Prior Counsel for Plaintiff.

Hon. Dennis C. Vacco, Office of the Attorney General of the State of New York, Albany, NY David B. Roberts, AAG, of counsel), for Defendant.

1. Official-capacity claims against individually named defendants were dismissed prior to trial.

2. Consistent with the Second Circuit's holding in *Annis v. County of Westchester,* 136 F.3d 239, 249

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

This fee application arises out of an action commenced by plaintiff Margaret A. Naughton Marshall ("Marshall") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* claiming that she was discriminated against based on her sex. Specifically, Marshall alleged that she was twice denied a promotion based on her gender (in 1992 and 1994), and that defendant retaliated against her after she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). This Court granted defendants' motion for summary judgment with respect to plaintiff's 1994 failure to promote and retaliation claims. *See Marshall v. State of New York Division of State Police,* 18 F.Supp.2d 194 (N.D.N.Y.1998) (McAvoy, C.J.). The parties proceeded to trial with respect to Marshall's remaining 1992 failure to promote claim.

After a three day jury trial, the jury found in favor of Marshall and the Court entered judgment against defendant State of New York Division of State Police (hereinafter the "defendant") for $4,699.00.[1] Notably, the parties stipulated prior to trial that this amount represented the amount of backpay due the plaintiff in the event that she prevailed on her 1992 failure to promote claim.[2]

Marshall now moves for costs and attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k) for representation provided by her original counsel, Ruberti, Girvin & Ferlazzo, P.C. ("Ruberti Firm"), and her subsequent trial counsel, Higgins, Roberts, Beyerl & Coan, P.C. ("Higgins Firm"). This Court disqualified the Ruberti Firm from continuing to represent Marshall based on its affiliation with attorney Kim Greene, who was formerly employed by New York State and who participated in confidential meetings and prepared a report dealing with an internal State Police investigation of sexual discrimination claims brought by several female employees

(2d Cir.1998), this Court disallowed Marshall's claim for compensatory damages relating to emotional distress.

of the State Police, including plaintiff Marshall (hereinafter the "Greene Report"). *See Marshall v. State of New York Division of State Police,* 952 F.Supp. 103 (N.D.N.Y.1997) (McAvoy, C.J.). The Court will address the fee applications of each firm separately in its analysis below.

## II. DISCUSSION

The Supreme Court has held that to determine the amount of "reasonable attorney's fees," the Court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's attorneys by a reasonable hourly rate. *See Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The operative term is "reasonable."

### A. Lodestar Figure–Reasonable Hours

Defendant challenges the reasonableness of both the overall time spent by Marshall's attorneys and the substance of much of the work performed during this litigation.

▮ In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). From these records the Court determines whether the hours spent on the litigation were "reasonable" so as to warrant full reimbursement. These records must also "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Carey,* 711 F.2d at 1148. Such records are necessary so that the Court "[m]ay determine the nature of the work done, the need for it, and the amount of time reasonably required." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987). The Court will analyze the reasonableness of the hours expended in light of these well-settled standards.

**3.** Because the Court employs the same hourly rate for partner and of counsel time, it refers to

### 1. Ruberti Firm

Defendant argues that the Ruberti Firm should not be awarded attorneys' fees in light of its disqualification from representing Marshall based on a conflict of interest. Specifically, defendant asks the Court to exercise its "discretion to disallow an award of attorney fees to a firm that has been ethically disqualified from continuing to participate in the litigation." Def. Mem. of Law at 7. In the alternative, defendant asks the Court to reduce any award made to the Ruberti Firm for the time incurred by the Higgins Firm in taking over the case. *See id.*

The Ruberti Firm seeks recovery of a total of 299.4 hours, representing $43,332.50 in attorneys' fees and $197.51 in costs. These hours include 118.15 hours of partner/of counsel time [3] and 181.25 hours of associate time.

The majority of this time related to requests for public records pursuant to New York's Freedom of Information Law ("FOIL") and subsequent Article 78 proceedings in state court, settlement negotiations with state officials, and preliminary matters relating to the initiation of plaintiff's lawsuit. While the Ruberti Firm also incurred substantial time with respect to defendant's disqualification motion, this time has not been included in the fee application. *See* Ruberti Firm Mem. of Law at 3.

#### i. Preparation of Fee Application

▮ The Ruberti Firm has claimed 37.8 hours solely with respect to preparation its present fee application. Notably, the Higgins Firm, whose fee application covers significantly higher hours, seeks only 15 hours relating to the preparation of its fee application. *See* Higgins Firm Mem. of Law at 15. Accordingly, the Court finds this amount excessive and believes that 12 hours is a more reasonable reflection of the time necessary for the Ruberti Firm to complete its fee application. The Court allocates these hours evenly between partner and associate time. Thus, 16.5 partner hours and 9.3 associate hours are disallowed.

this time collectively as partner time.

## ii. Drafting of Federal Complaint

■ The fee application requests approximately 26.1 hours relating to research and preparation of the federal complaint. The Complaint alleged (1) a First Amendment claim under 42 U.S.C. § 1983; (2) a gender discrimination claim under Title VII and New York State Human Rights Law; and (3) a retaliation claim under Title VII and New York State Human Rights Law. *See* Compl. at ¶¶ 79–90. Given the straightforward facts and established precedent in this area of the law, the Court finds that 12 hours, spread evenly between partner and associate time is reasonable. Thus, 3.4 partner hours and 10.7 associate hours are disallowed.

## iii. Discussions With the Media

■ The fee application includes approximately 4.45 hours relating to discussions with the media regarding the case. The Court disallows all of this time, allocated 3.75 hours of partner time and .70 hours of associate time.

## iv. Disqualification of Ruberti Firm

■ The fee application includes 1.1 partner hours and 6.3 associate hours for research regarding the conflict of interest issue and review of the Greene Report. Because the Ruberti Firm indicated that its fee application excluded all time with respect to the disqualification issue, see Ruberti Firm Mem. of Law at 3, all of this time is disallowed.

Additionally, the Higgins Firm spent approximately 4.4 partner hours and 19.45 associate hours in discussions with the Ruberti Firm related to taking over plaintiff's case and familiarizing themselves with the case file. Defendant acknowledges that this time is recoverable by the Higgins Firm, but argues that these fees should be deducted from any fees awarded to the Ruberti Firm. *See* Def. Mem. of Law at 9. The Court agrees. It is unreasonable for defendant to bear the costs associated with the Ruberti Firm's disqualification. Indeed, this Court found that the Ruberti Firm's internal screening procedures "were not instituted at the outset of this litigation." *See Marshall*, 952 F.Supp. at 112. Accordingly, all of these hours are deducted from the Ruberti Firm's fee application.

### v. FOIL Litigation

Defendant argues that all hours incurred with respect to the FOIL litigation should be disallowed because "petitioner was mostly unsuccessful in its pursuit of this body of documents under the State [FOIL] . . . [and] failed to recover attorney fees in the context of [plaintiff's] FOIL litigation." Def. Mem. of Law at 13. Defendant, therefore, does not challenge the reasonableness of these hours, but rather argues that these hours should be disallowed because of the Ruberti Firm's lack of success in the FOIL litigation. Because defendant fails to specify which hours, if any, are unreasonable, the Court finds that the hours expended with respect to the FOIL litigation and settlement negotiations reasonable, and therefore declines to disallow any portion of these hours. The Court notes, however, that the degree of success achieved in this facet of the litigation will be considered when analyzing the overall success of plaintiff's litigation.

In sum, the Court finds that the Ruberti Firm is entitled to 89 partner hours and 134.8 associate hours in its fee application.

### 2. Higgins Firm

The Higgins Firm seeks recovery of a total of 459.4 hours, representing $73,484.56 in attorneys' fees [4] and $2,759.56 in costs. These hours include 14.05 hours of partner time and 445.35 hours of associate time.[5]

Defendant's principal challenge to the Higgins Firm fee application lies with the hours incurred by associate Maryanne Low–Havi-

---

4. Although the Higgins Firm claims a total of $73,085.81 in attorneys' fees and costs in their application, see Aff. of Maryanne E. Low–Haviland (hereinafter "Low–Haviland Aff.") at ¶ 47, the Court notes that the individual time and expense records reflect a total of $73,484.56 in attorneys' fees and costs. *See id.* at ¶¶ 26–29; App. A, B.

5. While plaintiff attempts to characterize the time incurred by attorney Maryanne E. Low–Haviland as partner time based on her role as "lead counsel," the Court notes that Ms. Low–Haviland is an associate.

land. Specifically, defendant argues that approximately one-half of Low–Haviland's time is unreasonable, and should therefore be deducted in any award of attorneys' fees granted by the Court. This time relates, inter alia, to (1) meetings with an economics expert in computing a frontpay and backpay assessment; (2) assisting with and observing other trials litigating similar claims; (3) responding to defendants' summary judgment motion; and (4) preparing for trial.

#### i. Trial Preparation

■ The Higgins Firm fee application requests approximately 168 associate hours relating to trial preparation. Plaintiff's vague and blanket description of "prepare for trial" in its time records does not adequately inform the Court of the nature and extent of the work performed and therefore provides an inadequate basis to determine the reasonableness of these claimed hours. *See Dailey v. Societe Generale*, 915 F.Supp. 1315, 1328 (S.D.N.Y.1996) ("entries listed simply as 'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive"), *aff'd in relevant part*, 108 F.3d 451 (2d Cir. 1997); *Pressman v. Estate of Steinvorth*, 886 F.Supp. 365, 367 (S.D.N.Y.1995) (holding that plaintiff is not entitled to reimbursement for work described in invoices only as "telephone conversation," "prepare correspondence," or "review of file"). As other courts have stated, "[i]t is impossible to judge the reasonableness of spending two hours on an outline, or five hours on writing and research if the topic of the work is not disclosed." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y.1987). Permitting Plaintiff's counsel to recover on the basis of such vague entries "would reward him for maintaining time records that complicate the court's task of assessing reasonable attorney's fees and that augment the risk of error in the amount awarded." *Chambless v. Masters, Mates & Pilots Pension Plan*, 1988 WL 80170, at *5 (S.D.N.Y. July 21, 1988).

■ The fee applicant is obligated to "make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933. As a guide to evaluating these records, the Second Circuit has held that it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent. *See Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir.1992).

Even if the Higgins Firm's time records contained the minimal level of specificity required, the claimed hours are excessive given the nature of the claims to be litigated at trial. To support these hours, plaintiff asserts that "due to the adjournment requests by defendant ... and subsequent short trial notices, urgent time limits were placed on the [Higgins Firm], necessitating seven day per week attention to this case." Low–Haviland Aff. at ¶ 41. These factors, however, even if true, cannot reasonably justify the significant hours for trial preparation for which plaintiff seeks recovery. Accordingly, the Court finds that 65 hours is a more reasonable reflection of the time necessary to prepare for trial. Thus, 103 associate hours relating to trial preparation are disallowed.

#### ii. Attending the *Farrell* and *Monaco* Trials

■ In total, 21 associate hours were incurred relating to review and attendance of the *Farrell* and *Monaco* trials, which plaintiff alleges was necessary given the similarity of claims being litigated. Specifically, 14.5 associate hours related solely to Ms. Low–Haviland's attendance at these trials. While some portion of this time related to review of these other cases may have arguably benefitted plaintiff in developing her litigation strategy, it is not reasonable for plaintiff to recover attorneys' fees for time incurred for actually attending these trials. Accordingly, these 14.5 associate hours are disallowed.

#### iii. Expert Time

■ In total, approximately 15.65 associate hours were incurred in retaining and meeting with an economics expert and reviewing the expert's report computing a

frontpay and backpay assessment. At trial, the parties stipulated that plaintiff's recovery was limited to the portion of backpay relevant to the two-year period from 1992 to 1994 that preceded plaintiff's promotion to Assistant Director. Given the simplicity of calculating the backpay amount and the unavailability of frontpay damages, it is unreasonable for plaintiff to recover for all of the time incurred in dealing with the expert. Accordingly, 13.65 associate hours are disallowed.

### iv. Travel Time

 The Higgins Firm claims approximately 9.25 hours relating to travel. The decision to compensate an attorney for traveling time falls within the district court's discretion. *See Abou–Khadra v. Bseirani,* 971 F.Supp. 710, 719 (N.D.N.Y.1997). Where these hours are held recoverable, the billing rate for this time is reduced by 50%. *See id.* Because this time was incurred at the associate level, the Court will apply a rate of $50 per hour. *See Muller v. Costello,* 1998 WL 566781, at *2 (N.D.N.Y. Aug.31, 1998) (citing *Delancett v. Village of Saranac,* 986 F.Supp. 126, 129 (N.D.N.Y.1997)).

In sum, the Court finds that the Higgins Firm is entitled to 14.05 partner hours and 314.2 associate hours in its fee application.

### B. Lodestar Figure–Reasonable Rate

 The Supreme Court has adopted a marketplace model to determine the appropriate hourly rate, *see Blum,* 465 U.S. at 896, 104 S.Ct. 1541, which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. City of Rensselaer,* 663 F.Supp. 743, 745 (N.D.N.Y.1987); *see also Levy v. Scranton,* 1992 WL 265936 (N.D.N.Y. Oct.1, 1992); *Auburn Enlarged City Sch. Dist. v. Coastal Envtl. Safety and Control, Inc.,* 1990 WL 19139 (N.D.N.Y. Feb.27, 1990). The district court may also consider other rates that have been awarded in similar cases in the same district. *See, e.g., Miner v. City of Glens Falls,* 1992 WL 349668 (N.D.N.Y. Nov.12, 1992), *aff'd,* 999 F.2d 655 (2d Cir.1993).

The prevailing market rates found within the Northern District of New York are generally no more than $150 per hour for practitioners with significant experience. *See, e.g., Abou–Khadra v. Bseirani,* 971 F.Supp. 710, 718 (N.D.N.Y.1997) (Munson, J.) (finding $150 per hour is the prevailing rate for partners); *Equal Employment Opportunity Comm'n v. American Fed'n of State, County and Mun. Employees,* 1996 WL 663971 (N.D.N.Y. Nov.12, 1996) (McCurn, J.) ($150 per hour reasonable for partner with 20 years experience); *Haley v. Pataki,* 901 F.Supp. 85, 89 (N.D.N.Y.1995) (McAvoy, J.) ($150 per hour reasonable for a partner), *aff'd,* 106 F.3d 478 (2d Cir.1997); *Hannigan v. Board of Educ.,* 1997 WL 10971 at *8 (N.D.N.Y. Jan.9, 1997) (Scullin, J.) ($100 per hour is reasonable for associates); *Segarra v. Messina,* 158 F.R.D. 230, 235 (N.D.N.Y.1994) (McAvoy, J.) ($100 per hour is reasonable for associates).

### C. Lodestar Calculation

The lodestar amounts have been calculated as follows:

*Ruberti Firm:*

Partner: 89 hours at $150 per hour = $13,350.00

Associate: 134.8 hours at $100 per hour = $13,480.00.

Total Unadjusted Lodestar: $26,830.00

*Higgins Firm:*

Partner: 14.05 hours at $150 per hour = $2,107.50

Associate: 304.95 hours at $100 per hour = $30,495.00

Travel: 9.25 hours at $50 per hour = $462.50

Total Unadjusted Lodestar: $33,065.00

### D. Success of the Litigation

 Defendant argues that plaintiff's recovery should be reduced by 50% in light of plaintiff's "very limited success." Def. Mem. of Law at 8. To support its contention, defendant asks the Court to consider, inter alia, (1) the minimal amount of the verdict; (2) the dismissal of four of the five defendants prior to trial; (3) the dismissal of plaintiff's 1994 failure to promote and retaliation claims; (4)

the straightforward nature of the facts and settled precedent in this area of the law; (5) denial of any injunctive or declaratory relief; and (6) unavailability of frontpay and compensatory damages for emotional distress. *See id.* at 9.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933; *see also Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir.1974) (listing factors to be considered in determining fee award).[6] Thus, "in determining the reasonableness of a fee award in civil rights actions, the quantity and quality of relief obtained is a critical factor." *Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997) ("Where the damage award is nominal or modest, the injunctive relief has no systematic effect of importance, and no substantial public interest is served, a substantial fee award cannot be justified."); *see also Le-Blanc–Sternberg v. Fletcher*, 143 F.3d 748, 760 (2d Cir.1998); *McCardle v. Haddad*, 131 F.3d 43, 54 (2d Cir.1997); *Orchano v. Advanced Recovery, Inc.*, 107 F.3d 94, 98 (2d Cir.1997); *Culebras Enters. Corp. v. Rivera–Rios*, 846 F.2d 94, 102–03 (1st Cir.1988); *Amato v. City of Saratoga Springs*, 991 F.Supp. 62, 67 (N.D.N.Y.1998); *Collins v. Stolzenberg*, 970 F.Supp. 303, 304–05 (S.D.N.Y.1997) (reducing plaintiff's fee award by one-third due to limited success of obtaining compensatory damages equal to only one year's salary). On the other hand, "there is a 'strong presumption' that the lodestar figure represents the 'reasonable fee.'" *Grant*, 973 F.2d at 101 (*quoting City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). The party advocating an adjustment bears the burden of proof in establishing its necessity for achieving a reasonable fee award. *See United States Football League v. National Football League*, 887 F.2d 408, 413 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

In this case, plaintiff's lawsuit "involv[ed] a common core of facts ... [and] related legal theories." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933. Consequently, instead of attempting to dissect the case into discrete claims, the Court will, as the Supreme Court has suggested, "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

The Court finds defendant's arguments for a fee reduction based on plaintiff's limited success persuasive. First, this was a relatively straightforward Title VII discrimination case involving a settled area of law, one defendant, one plaintiff, and very limited damages. *See Carey*, 711 F.2d at 1146 (a court must make an "assessment of what is appropriate for the scope and complexity of the particular litigation."); *Clarke*, 960 F.2d at 1153 ("This was not a complex case.... The case did not involve any novel areas of law. Clarke's post-trial motions were neither complicated nor abstruse. In short, the record supports the district court's ruling that Clarke requested excessive attorney's fees."). Second, this Court granted defendants' motion for summary judgment with respect to plaintiff's 1994 failure to promote and retaliation claims, and prior to trial, the action was dismissed with respect to the individually named defendants. Third, the parties stipulated prior to trial that plaintiff's recovery was limited to an award for backpay with respect to plaintiff's 1992 failure to promote claim, thereby precluding plaintiff from recovering any damages relating to frontpay and emotional distress, representing the more substantial compensatory damages which Marshall originally sought in her complaint. Plaintiff's recovery was therefore

---

**6.** While many of these factors are now considered to be subsumed in the calculation of the lodestar, *see Dague v. City of Burlington*, 935 F.2d 1343, 1359 (2d Cir.1991), *rev'd in part on other grounds*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), in cases in which only partial success is achieved the lodestar may be reduced. *See Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir.1992), *cert. denied sub nom.*, *Bethlehem Steel Corp. v. Grant*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993); *Loper v. New York City Police Dept.*, 853 F.Supp. 716, 723 (S.D.N.Y. 1994).

minimal in light of the amount of damages she originally sought and the amount of damages ultimately awarded at trial. *See Myree v. Local 41, Int'l Bhd. of Elec. Workers,* 847 F.Supp. 1059, 1068 (W.D.N.Y.), *aff'd,* 29 F.3d 620 (2d Cir.1994); *see also Carroll,* 105 F.3d at 82 ("[H]ad [plaintiff] recovered more than nominal damages, say $2,000, an award of $50,000 would still be in error. Accordingly, because [plaintiff] obtained only minimal relief ... [an] award of $25,000 is entirely reasonable."); *Collins,* 970 F.Supp. at 305 ("Where plaintiff could not prove her claims against the [institutional defendants] and the jury rejected her claim for punitive damages and limited her compensatory damages to one year's salary only, her counsel achieved far less than 'unqualified success' and a reduction of one-third of otherwise proper counsel fees is necessary to make the fees properly correspond to the degree of success she actually achieved.").

The Second Circuit has expressly rejected a requirement in civil rights cases that an award of attorneys fees be computed in strict proportion to the degree of success a plaintiff has achieved. *See Lunday v. City of Albany,* 42 F.3d 131, 134–35 (2d Cir.1994); *Cowan v. Prudential Ins. Co. of America,* 935 F.2d 522, 525–28 (2d Cir.1991). The Court nevertheless recognizes that a number of the original claims were dismissed on summary judgment and four of the five defendants were dismissed prior to trial.

▮ In determining the amount of adjustment necessary to adequately compensate the prevailing party for his limited success, the Court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. The Court finds that it would be impossible to parse out certain work and identify it as being less important to the overall outcome of the litigation. Rather, the Court will adjust the lodestar for both the Ruberti Firm and the Higgins Firm by 50% to account for the notably limited nature of plaintiff's success. *See Ragin v. Harry Macklowe Real Estate Co.,* 870 F.Supp. 510, 522–23 (reducing lodestar fees by 50% given plaintiff's limited success in

obtaining some injunctive relief and compensatory damages that was less than requested); *Myree,* 847 F.Supp. at 1069 (reducing lodestar by 75% given plaintiff's inability to recover substantial compensatory and punitive damages).

Thus, plaintiff's modified lodestar is as follows: Ruberti Firm: $13,415.00 (50% of $26,830.00) and Higgins Firm: $16,532.50 (50% of $33,065.00).

### E. Disqualification of Ruberti Firm

▮ The Court finds that a further reduction to the lodestar amount for the Ruberti Firm of 50% is appropriate in light of this Court's disqualification of the Ruberti Firm.

In granting defendant's motion to disqualify the Ruberti Firm based on a conflict of interest, this Court noted:

> [N]one of the affidavits submitted by Plaintiff's counsel suggest than any formal institutional mechanisms were in place before or after Greene's arrival at the Ruberti Firm that would have insulated her from this sexual harassment case. It appears that the only action that the Ruberti Firm took, which can be construed as a screening procedure, was to have Ms. Greene leave the firm ... almost a year after she became affiliated with the Ruberti Firm. The fact that screening measures were not instituted from the outset of the litigation raises further doubts as to the Ruberti Firm's ability to screen itself from Ms. Greene. Disqualification of the Ruberti Firm is therefore necessary.

*Marshall,* 952 F.Supp. at 111–12.

▮ In one sense, the Ruberti Firm seeks to be rewarded for fees where its representation of the plaintiff was improper. Therefore, the Court is faced with the issue whether the Ruberti Firm should recover fees for work that it never should have undertaken. In such a case, "[d]enial of attorneys' fees may be a proper sanction for violation of an ethical canon." *Culebras Enters. Corp.,* 846 F.2d at 97. Accordingly, an attorney should be permitted to claim fees "only for services provided before the conflict arose and the ethical breach occurred." *Im-*

*age Technical Serv. Inc. v. Eastman Kodak Co.,* 136 F.3d 1354, 1358 (9th Cir.1998). The Court, however, is cognizant that the services performed by the Ruberti Firm may have in some way "contributed to [plaintiff's] success in the lawsuit." *Mammano v. Pittston Co.,* 792 F.2d 1242, 1245 (4th Cir.1986). Accordingly, the Court finds that a 50% reduction in the modified loadstar amount for the Ruberti Firm is reasonable.

Thus, the new modified lodestar for the Ruberti Firm is reduced to $6,707.50 (50% of $13,415.00).

### F. Costs and Expenses

The costs associated with litigation are generally recoverable if they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.,* 818 F.2d 278, 283 (2d Cir.1987) (*citing Laffey v. Northwest Airlines, Inc.,* 746 F.2d 4, 30 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985)). The scope of allowed costs should include those that are "incidental and necessary" to the representation of the client. *Id.* (*citing Northcross v. Board of Educ.,* 611 F.2d 624, 639 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980)). Under this rule, costs are not allowed if they cannot be attached to the advancement of a specific claim, or if they are so general that they could be placed under the cost umbrella of overhead or office expense. *Abou–Khadra,* 971 F.Supp. at 720.

As to those general and administrative expenses incurred by plaintiff, the Court finds the requested amounts reasonable expenses, consistent with those granted in the course of providing legal services and usually charged to a fee-paying client. *See Thomas v. Board of Educ.,* 505 F.Supp. 102, 105 (N.D.N.Y. 1981) (allowing recovery for travel costs, telephone bills and photocopying costs); *Fiacco,* 663 F.Supp. at 746 (allowing recovery for postage and telephone calls). However, the costs associated with the retention of the economics expert by the Higgins Firm is more troublesome given the limited issue of damages that ultimately went to the jury.

As previously noted, the parties stipulated to the amount of backpay damages prior to trial, without the aid of an expert, given the relative simplicity of the underlying computation. Given the inability of plaintiff to seek recovery for the more substantial damages relating to frontpay and emotional distress, where more involved calculations would likely require the use of an expert, it is unreasonable for defendant to bear the cost of the expert's report. Accordingly, the cost of the expert's report, $1,000.00, is disallowed. In addition, because the time incurred by the Higgins Firm in observing the *Farrell* trial is disallowed, so too must be travel expenses of $29.10 associated with attending the trial be disallowed.

Thus, the Court awards plaintiff $197.51 in costs to the Ruberti Firm and $1,730.46 in costs to the Higgins Firm.

### III. CONCLUSION

In summary, the Court awards plaintiff attorneys' fees and costs against defendant State of New York Division of State Police in the following amounts:

Ruberti Firm: $6,707.50 in attorneys' fees and $197.51 in costs; and

Higgins Firm: $16,532.50 in attorneys' fees and $1,730.46 in costs.

IT IS SO ORDERED.